**NAUTILUS INSURANCE COMPANY,**
Plaintiff–Appellee,

v.

**WINCHESTER HOMES,**
**INCORPORATED, Defendant–Appellant,**

**RELIANCE WOOD PRESERVING, IN-**
**CORPORATED; Pennsylvania Lumber-**
**men's Mutual Insurance Company;**
**Great American Insurance Company,**
**Defendants–Appellees,**

v.

**Martin MULLANEY, Third**
**Party Defendant.**

No. 92–1799.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 1, 1992.

Decided Feb. 3, 1994.

---

**ARGUED:** Vernon Webster Johnson, III, Jackson & Campbell, P.C., Washington, DC, for Appellant. Robert Lawrence Ferguson, Jr., Thieblot, Ryan, Martin & Ferguson, Baltimore, Maryland, for Appellees. **ON BRIEF:** Michael J. McManus, Jackson & Campbell, P.C., Washington, DC, for Appellant. Jodi K. Ebersole, Thieblot, Ryan, Martin & Ferguson, Baltimore, Maryland; John Hamilton Johnston, Slenker, Brandt, Jennings & Johnston, Merrifield, Virginia; Thomas J. Minton, Kathryn Miller Goldman, Quinn, Ward & Kershaw, P.A., Baltimore, Maryland, for Appellees.

Before WIDENER and PHILLIPS, Circuit Judges, and SPROUSE, Senior Circuit Judge.

## OPINION

PHILLIPS, Circuit Judge:

Winchester Homes, Inc. ("Winchester"), one of several defendants in a declaratory judgment action brought to resolve a dispute over liability insurance coverage, appeals the district court's dismissal of that action, on the eve of trial, in deference to pending state court litigation against the insured on the underlying claims for which coverage is sought. The appeal raises once again the

difficult question of when a federal district court may decline to entertain a declaratory judgment action that is properly within its jurisdiction because of the pendency of related litigation in the state courts. Winchester also attempts to obtain review of an earlier ruling by the district court—later vacated by that court itself—that denied in part its motion for summary judgment. Because we find that the district court erred in dismissing the declaratory judgment action, we reverse the order of dismissal and remand with instructions to reinstate the action. We decline to review the vacated ruling denying Winchester's motion for summary judgment.

## I.

Reliance Wood Preserving, Inc. ("Reliance") is a Maryland corporation that was engaged, prior to its bankruptcy, in the business of producing and distributing fire retardant plywood. In 1988, Nautilus Insurance Company ("Nautilus") issued a general liability insurance policy to Reliance. The policy contained a products liability endorsement, in which Nautilus agreed to indemnify Reliance, within specified limits, for any sums the latter might become legally obligated to pay to third parties as damages for injuries to person or property caused by its products, and to defend it against any actions seeking damages for such injuries. The policy, as renewed, was in effect from July of 1988 until July of 1990.

Winchester is a Delaware corporation that builds townhouses and other residential properties. In November of 1990, Winchester filed two separate products liability actions—one in the Circuit Court for Montgomery County, Maryland; the other in the Circuit Court for Fairfax County, Virginia—against Reliance and 13 other entities allegedly involved in the manufacture and distribution of fire retardant plywood it had used in some townhouses it built and sold during the 1980's. In those actions, Winchester sought damages for property damage and related economic losses allegedly caused it by that plywood, which it claimed had begun to deteriorate after installation.[1] After being notified of Winchester's claims, Nautilus provided Reliance with a defense against them, subject to a full reservation of its rights under the policy.

In February of 1991, some four months after Winchester's state court actions were filed, Nautilus filed this declaratory judgment action in the United States District Court for the District of Maryland. Nautilus sought a declaration that it was not obligated to defend or indemnify Reliance against the claims being asserted by Winchester in the state court actions, contending that the policy was void because of material misrepresentations and omissions made by Reliance in applying for it, and that the claims in question were in any event not within the scope of its coverage. Nautilus named as defendants in this declaratory action its policyholder Reliance, the tort claimant Winchester, and two other insurance companies that had issued liability insurance policies to Reliance, Pennsylvania Lumbermen's Mutual Insurance Company ("PLMIC") and Great American Insurance Company ("GAIC").[2] The sole basis for federal subject matter jurisdiction was diversity of citizenship. Reliance counterclaimed against Nautilus, seeking a declaration that Nautilus was required to defend and indemnify it in the state court actions, as well as damages for fraudulent misrepresentation.

On June 25, 1991, Reliance filed a petition in bankruptcy, which stayed all litigation, both federal and state, then pending against it. The Bankruptcy Court lifted the automatic stay to allow both the underlying tort actions and this declaratory action to proceed against Reliance. Reliance elected to cease all direct participation in this case, however, and Winchester assumed its interests in it, in order to preserve its own interest in the

1. Nautilus and the other liability insurers of the defendant manufacturers and distributors are not parties to the state court actions, and those actions do not directly raise the issue of whether those liability insurers are obligated to defend or indemnify the defendants against Winchester's claims.

2. Martin Mullaney, the insurance agent through whom Reliance had purchased the Nautilus policy, was later brought into the suit by Reliance as a third-party defendant.

Nautilus policy, which was the only asset in Reliance's estate in bankruptcy and thus Winchester's only hope for satisfying any judgment it might obtain against Reliance in the underlying tort actions. On April 10, 1992, Reliance's estate in bankruptcy formally assigned its interest in the Nautilus policy to Winchester.

After seven months of extensive discovery, Winchester and the three insurance companies each filed motions for summary judgment in this action. The motions were referred to a United States Magistrate Judge, who recommended that Winchester's motion for summary judgment be granted in part, but denied with respect to Nautilus' claim that its policy was void for misrepresentation. The District Court issued an order adopting the Magistrate Judge's recommendations in their entirety, including the denial of Winchester's motion for summary judgment on the void-for-misrepresentation issue.

On April 20, 1992, one week before trial was scheduled to begin, GAIC moved to dismiss this action because of the pendency of the underlying tort actions in state court, citing our recent decision in *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992). The district court granted the motion and dismissed this action, over the objection of Nautilus and Winchester, on the authority of *Mitcheson.* In its order of dismissal, the district court expressly vacated all of its prior rulings in the case, including its denial of Winchester's motion for summary judgment on the void-for-misrepresentation issue.

Winchester filed this timely appeal from the order of dismissal. GAIC, now joined by PLMIC and Nautilus, has moved to dismiss the appeal for lack of jurisdiction. We deferred ruling on that motion until oral argument on the appeal.

## II.

■ At the outset, we must address the motion to dismiss the appeal for lack of jurisdiction. In that motion, GAIC contends that Winchester lacks standing to appeal the order dismissing the declaratory action, because it was not aggrieved by that order. It points out that Winchester was a defendant in the declaratory action, rather than a plaintiff; that it never filed any sort of counterclaim or cross-claim seeking affirmative relief in its own behalf; and that it had in fact urged the district court, both in its answer and in a later motion for judgment on the pleadings, to dismiss it from the action. As a result, GAIC contends, Winchester was not sufficiently aggrieved by the order of dismissal to be entitled to take an appeal from it.

We disagree. It is true that Winchester has never asserted any claims for affirmative relief in its own name in this action, and that it originally sought to have itself dismissed from the action. These facts do seem at first blush to suggest that Winchester was not sufficiently aggrieved by the order of dismissal to be entitled to appeal from it. *See Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980) (ordinarily, party may not appeal from a judgment or order of a district court unless he is aggrieved by it, and party is generally not aggrieved by a judgment that awards it all of the relief it seeks); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* ¶ 203.06 (2d ed. 1993), at 3–26 through 3–27 (same). But first impressions are often deceptive, and on closer examination, we are satisfied that Winchester was in fact aggrieved by the order it now seeks to appeal.

GAIC's argument ignores the fact that Winchester's position in this lawsuit changed dramatically between the time it filed its answer and motion for judgment on the pleadings urging dismissal and the time the district court issued the order of dismissal from which it now seeks to appeal. After Reliance filed a petition in bankruptcy and assigned all of its rights in the Nautilus policy to Winchester, Winchester, as assignee of Reliance's rights against Nautilus, took over the prosecution of Reliance's counterclaim for a declaration that the tort claims Winchester was asserting against it were covered by the Nautilus policy. In that new capacity, Winchester abandoned its earlier effort to obtain dismissal of this case and in fact actively urged the court not to grant GAIC's motion to dismiss. The order from

which Winchester now seeks to appeal dismissed not only Nautilus' request for a declaration that it had no duty to defend or indemnify Reliance, but also Reliance's countervailing request for a declaration that Nautilus did have such duties. Winchester, as assignee of Reliance's rights under the policy, was therefore sufficiently aggrieved by the order of dismissal to take an appeal from it.

## III.

■ We turn now to the merits of Winchester's challenge to the district court's decision to dismiss this declaratory action. The Federal Declaratory Judgment Act gives a federal district court the power, in any "case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The district court unquestionably had the power to entertain Nautilus's declaratory judgment action, as it was a "case of actual controversy" within the court's diversity jurisdiction.[3] Winchester contends that the district court erred in refusing to exercise this power, and we agree.

■ It has long been settled that a federal court has some measure of discretion to decline to entertain a declaratory judgment action that is otherwise properly within its jurisdiction. *See, e.g., Public Affairs Assoc., Inc. v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 581, 7 L.Ed.2d 604 (1962); *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 494, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620 (1942). *See generally* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure:* Civil 2d § 2759 (1983). This discretion is not unbounded, however: a district court may not refuse to entertain a declaratory judgment action out of "whim or personal disinclination," *Rickover,* 369 U.S. at 112, 82 S.Ct. at 582, but may do so only for "good reason." *Aetna Cas. & Sur. Co. v. Quarles,* 92 F.2d

321, 324 (4th Cir.1937); *see* 10A Wright, Miller, & Kane, *supra,* § 2759, at 655–58. In reviewing a district court's decision to decline to entertain a declaratory judgment action properly within its jurisdiction, we therefore "do[ ] not approach the case in a wholly deferential posture," but instead "exercise [our] own judgment in reviewing the various interests at stake." *Mitcheson,* 955 F.2d at 237. We have characterized this review, which requires us effectively to "substitute our discretion for that of the district court[ ]," as essentially "de novo." *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993).

Because the remedial discretion conferred by the Declaratory Judgment Act must "be liberally exercised to effectuate the purposes of the statute," *Quarles,* 92 F.2d at 324, we have held that a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) " 'will serve a useful purpose in clarifying and settling the legal relations in issue,' " and (ii) " 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Id.* at 325 (quoting E. Borchard, *Declaratory Judgments* 107–09 (1934)); *see White v. National Union Fire Ins. Co.,* 913 F.2d 165, 168 (4th Cir.1990) (same). As we said in *Quarles:*

> The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships.

92 F.2d at 325.

Applying this analysis, we have frequently approved the use of federal declaratory judg-

---

**3.** A dispute between a liability insurer, its insured, and a third party with a tort claim against the insured over the extent of the insurer's responsibility for that claim is an "actual controversy" within the meaning of the federal Declaratory Judgment Act, even though the tort claimant

has not yet reduced his claim against the insured to judgment. *See Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941). It is undisputed that there is complete diversity between the plaintiff Nautilus and the various defendants in this action.

ment actions to resolve disputes over liability insurance coverage, even in advance of a judgment against the insured on the underlying claim for which coverage is sought. *See, e.g., Stout v. Grain Dealers Mut. Ins. Co.,* 307 F.2d 521 (4th Cir.1962); *Farm Bureau Mut. Auto. Ins. Co. v. Daniel,* 92 F.2d 838 (4th Cir.1937); *see also White,* 913 F.2d at 167–69 (dispute over amount of underinsured motorist coverage available). *See generally* 6A *Moore's Federal Practice, supra,* ¶ 57.19 (citing cases from other courts to same effect). As the Third Circuit has explained, the nature of the duties a liability insurer owes its insured makes such disputes particularly appropriate for early resolution in a declaratory action:

> [A] liability insurer's indemnification agreement carries with it not only an obligation to pay judgments against the insured but also, in the real world, to pay settlement amounts. Indeed liability insurers owe fiduciary obligations to their insureds with respect to the consideration of settlement offers and the conduct of settlement negotiations.... The respective interests and obligations of insured and insurers, when disputed, [thus] require determination much in advance of judgment [against the insured] since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement.... To delay [resolution of this controversy until the underlying suit against the insured proceeds to judgment] ... would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs. [Federal] declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights."

*ACandS, Inc. v. Aetna Cas. & Sur. Co.,* 666 F.2d 819, 823 (3d Cir.1981); *see Quarles,* 92 F.2d at 325 (a federal declaratory action "may furnish a convenient and appropriate remedy for use in many cases where a controversy has arisen over the coverage of [a] ... liability insurance policy").

In *Mitcheson,* we recognized that when an insurer comes to federal court seeking a declaratory judgment on coverage issues while the underlying litigation against its insured is pending in the state courts, considerations of federalism, efficiency, and comity should also figure into the discretionary balance, and may, in certain circumstances, require the federal court to refuse to entertain the action, even when the declaratory relief sought would serve a useful purpose. 955 F.2d at 237–41. But *Mitcheson* did not announce a *per se* rule forbidding a federal court to entertain a declaratory action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in the state courts. Such a rule would, of course, be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation. *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 125–28, 88 S.Ct. 733, 746–47, 19 L.Ed.2d 936 (1968); *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).[4]

Instead, *Mitcheson* held only that when a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in *Quarles,* which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts. *See* 955 F.2d at 237–41. In *Mitcheson,* we suggested that those additional concerns might require

---

**4.** For this reason, the federal appellate courts have uniformly recognized that the mere pendency of a related tort action against the insured in state court does not in and of itself require a federal court to refuse an insurer's request for declaratory relief on coverage issues. *See, e.g., Chamberlain v. Allstate Ins. Co.,* 931 F.2d 1361, 1367 (9th Cir.1991); *Allstate Ins. Co. v. Green,* 825 F.2d 1061, 1066 (6th Cir.1987); *American States Ins. Co. v. D'Atri,* 375 F.2d 761, 763 (6th Cir.1967). *See generally* 6A *Moore's Federal Practice, supra,* ¶ 57.19, at 57–205 through 57–211.

the court to consider: (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts, *id.* at 237–38; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending, *id.* at 239; and (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law," *id.* at 239–40. To these we now add another related consideration, which figures prominently in the formulations developed by other courts and is, we think, at least implicit in our discussion in *Mitcheson:* whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable." 6A *Moore's Federal Practice, supra,* ¶ 57.08[5]; *cf. Mitcheson,* 955 F.2d at 238–39 (federal court should not have entertained action for declaratory relief on state-law issues, where non-removable action arising from same basic controversy and presenting many of the same issues of law and fact was already pending in state court at the time it was filed).

In *Mitcheson* itself, consideration of these additional factors led us to conclude that the district court should have declined to entertain a liability insurer's action for declaratory relief on coverage issues, despite its obvious utility to the parties, because of the pendency in state court of the underlying tort action for which the insured claimed coverage. We reasoned that the state's interest in having the issues raised in the federal action decided in its own courts was "particularly strong" there, because those issues were all governed by state law, and the issues of state law presented were "close," "problematic," and "difficult[ ]." *Id.* at 236–40. We also thought that it would "make[ ] no sense as a matter of judicial economy" for the federal court to entertain the declaratory action, since there was already an action pending in state court that "stemm[ed] from the same overall controversy" and "involv[ed] overlapping issues," and the state court had the

ability to resolve all issues raised in the federal declaratory action. *Id.* at 239. Finally, we thought that permitting the federal declaratory action to go forward might result in unnecessary "entanglement" between the federal and state court systems, because many of the issues of law and fact raised in it were already being litigated in the pending state action between the insured and the tort claimant, both of whom were also parties to the federal declaratory action. *Id.* at 239–40. We explained that if the federal court reached final judgment before the state court, its resolution of those common issues might be entitled to preclusive effect in the state action, which would " 'frustrate the orderly progress' of [the] state court proceedings by leaving the state court with some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution." *Id.* At bottom, then, *Mitcheson* simply applied the long-standing rule that a federal court should "[o]rdinarily" decline, for reasons of efficiency and comity, to grant declaratory relief "where another suit is pending in a state court presenting the *same issues,* not governed by federal law, between the *same parties.*" *Brillhart,* 316 U.S. at 495, 62 S.Ct. at 1175–76 (emphasis added).

In this case, a liability insurer and its insured have come to federal court seeking a declaratory judgment on coverage issues during the pendency of related state court litigation against the insured. There is no question but that the declaratory relief sought would "serve a useful purpose in clarifying and settling the legal relations in issue," and that it would "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Quarles,* 92 F.2d at 325 (internal quotations omitted). The critical question, then, is whether—on the facts of this case—the additional considerations of federalism, efficiency, and comity discussed above are sufficiently compelling to justify a refusal to exercise jurisdiction, despite the obvious utility of the declaratory relief sought. The district court held that they were and dismissed the action. After making our own independent assessment of the relative weight of the various

interests involved, *Mitcheson*, 955 F.2d at 237, however, we conclude that the district court overstepped the bounds of its discretion in so doing.

In the first place, we do not think there is a compelling state interest in having the particular issues raised in this federal declaratory action decided in the state courts. *See Mitcheson*, 955 F.2d at 237–38. As the district court noted, all of the issues of insurance coverage raised here are governed by the substantive law of the State of Maryland. But that alone provides no reason for declining to exercise federal jurisdiction. In analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex, or unsettled. *See, e.g., Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (*Pullman* abstention appropriate only when case involved "difficult," "unsettled," and "uncertain" questions of state law that may avoid need to resolve substantial federal constitutional question); *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 27 n. 2, 79 S.Ct. 1070, 1072 n. 2, 3 L.Ed.2d 1058 (1959) (abstention to avoid conflict with state eminent domain proceedings appropriate only where critical issue of state law is "doubtful and unsettled"); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (*Burford* abstention appropriate only where case presents "difficult" questions of state law bearing on policy problems of substantial public import); *cf. City of Houston v. Hill*, 482 U.S. 451, 471, 107 S.Ct. 2502, 2515, 96 L.Ed.2d 398 (1987) (certification of questions of state law to state courts not appropriate unless they are "uncertain"). We think such a requirement that the state law issues be "difficult" or "unsettled" is implicit in *Mitcheson*, which emphasized repeatedly

that the particular state-law questions raised were "close," "difficult," and "problematic," *see* 955 F.2d at 236, 240; and specifically relied upon the other abstention doctrines mentioned above in holding that the state's interest in having those issues of state law decided in its own courts could properly be considered to weigh against the federal court's exercise of jurisdiction over the declaratory judgment action, *see id.* at 238.

In this case, unlike *Mitcheson*, the questions of state law raised in the federal action are not close, difficult, or problematic; instead, they involve the routine application of settled principles of law to particular disputed facts.[5] Maryland's interest in having those issues decided in its own courts, which is thus no stronger than it is in any case in which a federal court has jurisdiction over a claim in which state law provides the rule of decision, is not sufficiently compelling to weigh against the exercise of federal jurisdiction. *See Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367, 1376 (9th Cir.1991) (Hall, J., dissenting) (state's interest in having issues of state law decided in its own courts may properly be considered to weigh against federal court's exercise of jurisdiction over declaratory judgment action only when the state law issues presented are "complex", "difficult," or "unsettled").

Nor do we think that the issues raised in the federal declaratory action can more efficiently be resolved in the courts in which the state actions are pending. *See Mitcheson*, 955 F.2d at 239. In evaluating these efficiency concerns, the Supreme Court has directed us to focus primarily on "whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding[s]" that are already "pending in the state court[s]." *Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176. This in turn requires careful inquiry into "the scope of the pending state court proceeding[s]," including such

---

5. By way of illustration, we note that the district court was able to dispose of several of the state-law issues raised here on summary judgment, that it fully agreed with the Magistrate Judge's application of state law with respect to those issues, and that it refused a request to certify certain other state-law issues to Maryland's high-

est court, on the ground that it was not "genuinely uncertain" about their resolution. *Compare Mitcheson*, 955 F.2d at 240 (characterizing state-law issues as "close" and "difficult[]" because district court and dissenting member of panel from court of appeals had reached opposite conclusions on them).

matters as "whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." *Id.*

After examining the scope of the pending state proceedings, we cannot say with any confidence that the issues raised in this federal declaratory action can better be resolved in those proceedings. The basic dispute here is over which of Reliance's three liability insurers—if any—is contractually obligated to defend and indemnify Reliance against Winchester's claims. That issue is not directly raised in either of the two pending state actions, which involve the entirely separate and independent question of Reliance's liability to Winchester under the tort law of two different states. Nor are all parties with interests in this coverage dispute joined as parties to the pending state proceedings: none of the three insurance companies whose policies are implicated in this dispute is formally a party to either of those actions. Finally, it is not clear to us that the insurers can be brought into those actions at this point. Under these circumstances, we cannot say that the issues raised in this declaratory action can more efficiently be resolved in the pending state proceedings.

That the issues raised here might be resolved in some yet-to be filed action brought in state court—either another action for declaratory relief or an action for indemnity after entry of judgment against Reliance in the underlying tort suits—is not alone sufficient to justify dismissal of this action. *See* 6A *Moore's Federal Practice, supra,* ¶ 57.-08[3], at 57–43. It is well-settled that the mere availability of another adequate remedy does not preclude federal declaratory relief, *see* Fed.R.Civ.Proc. 57, and that a federal court may properly decline to entertain a declaratory judgment action because of the availability of another adequate remedy only if it finds that the other remedy would be a "more effective or efficient" means of resolving the controversy. *See* 6A *Moore's Federal Practice, supra,* ¶ 57.08[3], at 57–42 through 57–44. That is plainly not the case here. At the time the motion to dismiss this declaratory action was made, it was less than a week away from trial, and the district court had already made final decisions on the merits of a number of the claims being asserted, which the district court conceded had "go[ne] a long way to resolving the coverage issue." [6] JA 797. It is difficult to imagine a less efficient use of judicial resources than dismissing this action on the eve of its trial and requiring the parties to start over again in a different court. Under these circumstances, it cannot credibly be argued that some yet-to-be-instituted action in the state courts offers a "more effective or efficient" means of resolving the coverage issues presented here. *See Provident Tradesmens,* 390 U.S. at 126, 88 S.Ct. at 746 (fact that there have been substantial proceedings on the merits in the federal declaratory action before the motion to dismiss is made is a factor that "should be taken into consideration in deciding whether dismissal is the wiser course").

Nor do we think that permitting this federal declaratory action to go forward would result in unnecessary "entanglement" between the federal and state court systems. Unlike *Mitcheson,* this is not a case where many of the issues of law and fact sought to be adjudicated in the federal declaratory action are already being litigated by the same parties in the related state court actions. As earlier noted, the basic issue sought to be resolved here is whether Nautilus, GAIC, and PLMIC are contractually obligated, under the contract law of Maryland, to defend and indemnify Reliance against Winchester's

---

**6.** We are aware that there have, of course, been some developments in the state court actions in the 22 months since the district court dismissed this federal action. These developments do not affect our analysis here, however, for we review the district court's decision to dismiss this action on the basis of the situation that confronted it at the time it made that decision, *see* 6A *Moore's Federal Practice, supra,* ¶ 57.08[6.–1], at 57–60 (assessment of the comparative utility of alternative means of resolving dispute presented in federal declaratory action is to be made "as of the time of the hearing on the motion to dismiss"), without regard to any later developments—unless, of course, those developments are sufficient to render this entire action moot. We are satisfied that the developments in the state court actions to date have not yet rendered this coverage dispute moot.

claims. The issues in the pending state court actions are quite different ones having to do only with whether Reliance and/or some 13 other manufacturers and distributors of fire retardant plywood are liable, under the tort law of two different states, for the losses allegedly suffered by Winchester. *Cf. White,* 913 F.2d at 169 (declaratory action concerning amount of underinsured motorist insurance coverage available to injured party was not "duplicative" of underlying tort action against underinsured motorist since the latter "address[es] only the tort issues and . . . not . . . insurance coverage issues"). We are satisfied that there is no significant overlap in the issues of fact that must be decided to resolve these two separate and independent legal controversies. *See American States Ins. Co. v. D'Atri,* 375 F.2d 761, 763 (6th Cir.1967) (rejecting argument that question of insurer's obligation to defend and indemnify insured against tort claim was "inextricably bound up with" the general question of insured's liability to tort claimant); *Sears, Roebuck & Co. v. Zurich Ins. Co.,* 422 F.2d 587, 589–90 (7th Cir.1970) (same); *Maryland Cas. Co. v. Consumers Finance Serv.,* 101 F.2d 514, 515–16 (3d Cir.1938) (same).

Finally, we are satisfied that this federal declaratory action is not being used merely as a device for procedural fencing. This is not a case in which a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum, for the issues presented in this declaratory action are not the same as those raised in the pending state court proceedings. *Compare, e.g., Grand Trunk Western R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984). Nor is there any indication that this declaratory action was filed in an effort to obtain a federal forum in a case not otherwise removable. *Compare, e.g., New Orleans Public Service, Inc. v. Majoue,* 802 F.2d 166 (5th Cir.1986). Instead, this action was filed in an entirely proper effort to obtain prompt resolution of a dispute over a liability insurer's obligation to defend and indemnify its insured against certain tort claims then being pressed against it in state court—a dispute that was separate and independent from the ongoing litigation in the state courts, and particularly appropriate for early resolution in a declaratory action. *See ACandS,* 666 F.2d at 823.

Though the parties might have filed this declaratory action in state court, they chose to proceed in federal court instead, as they were authorized to do by 28 U.S.C. §§ 1332 and 2201. Having done so, they are entitled to have the federal court issue the declaration of rights and duties that they seek, unless the considerations of federalism, efficiency, and comity outlined in *Mitcheson* are strong enough to overcome the federal policy in favor of awarding declaratory relief where it will "serve a useful purpose in clarifying and settling the legal relations in issue" and "afford relief from the uncertainty, insecurity, and controversy giving rise to the controversy." *Quarles,* 92 F.2d at 324 (internal quotations omitted). On the facts of this case, unlike those in *Mitcheson,* we find that these additional considerations of federalism, efficiency, and comity are not sufficiently compelling to overcome the strong federal interest in awarding declaratory relief that will serve the salutary purposes of the Declaratory Judgment Act. We therefore conclude that the district court erred in dismissing this declaratory action on the eve of its trial.

### IV.

■ Though Winchester's notice of appeal referred only to the April 28, 1992 order of dismissal, Winchester now asks us to review as well the district court's earlier ruling, embodied in an order dated June 26, 1992, which denied its motion for summary judgment with respect to Nautilus' void-for-misrepresentation defense. We decline to do so. The district court expressly vacated the ruling in question in its later order of dismissal, and it is now a nullity. Accordingly, no appeal from it can be taken.

### V.

For the foregoing reasons, we reverse the district court's dismissal of the declaratory judgment action and remand with instructions to render a declaratory judgment on

the issue of insurance policy coverage.[7] On remand, the district court may reconsider all pending motions and either reinstate its prior rulings on those motions or rule anew on them.

*SO ORDERED.*

7. Unless, of course, any intervening events have by then wholly mooted the case. *See* note 6, *supra.*