**UNITED STATES LIABILITY INSURANCE COMPANY, Plaintiff,**

**v.**

**Robin WISE, as she is mother and Next Friend of Amanda EASLER and Tonya Easler, Defendant.**

**Civ. A. No. 93–10904–JLT.**

United States District Court,
D. Massachusetts.

April 26, 1995.

Pamela S. Gilman, Taylor, Anderson & Travers, Boston, MA, for United States Liability Insurance Co.

Michael T. Smerczynski, Pearl, McNiff, Crean, Cook & Sheehan, Peabody, MA, for Kathleen Romanos, Alexander Piacitelli, Jr., Walter Thornton, Jr.

Margaret G. Barmack, Barmack & Boggs, Lynn, MA, for Robin Wise.

## MEMORANDUM

TAURO, Chief Judge.

In the present federal declaratory judgment action, plaintiff United States Liability Insurance Company ("USLIC") seeks a declaration of its rights, duties and responsibilities under several liability insurance policies issued to Warren Realty Limited Partnership ("Warren").

The subject of this memorandum is the court's sua sponte decision to decline jurisdiction.

## I.

### Background

In September 1989, defendant Robin Wise made a written demand for relief against her landlord, Warren. She claimed her minor daughter, Tonya Easler, was poisoned by lead paint while a tenant in two of Warren's leased premises. In anticipation of Wise's potential lawsuit, Warren demanded that its insurer, plaintiff USLIC, defend and indemnify pursuant to the terms of three liability insurance policies (the "Policies").[1]

---

1. Warren's properties were insured under three consecutive Owners', Landlords', and Tenants' liability insurance policies issued by USLIC. The policy periods were from (1) September 27, 1986 to September 27, 1987, (2) September 27, 1987 to September 27, 1988, extended by endorsement to November 6, 1988, and (3) November 6, 1988 to November 6, 1989.

Wise ultimately sued Warren in Essex Superior Court (the "State Action").[2] Although USLIC provided Warren with counsel to conduct its defense, it contested its obligation to indemnify. Accordingly, USLIC brought the present federal action. It seeks a declaratory judgment (1) that any liability for bodily injury resulting from lead paint exposure is excluded from coverage by the Policies' "absolute pollution" exclusion, and (2) that any alleged bodily injury occurred prior to the inception of USLIC's first Policy.[3]

## II.

### Jurisdiction

■ This court has decided to decline jurisdiction, given the pending Essex Superior Court action.

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976), the Supreme Court held that district courts may surrender jurisdiction in favor of concurrent state proceedings only in certain "exceptional" circumstances.[4] The Court noted that, because of the federal courts' "virtually unflagging obligation ... to exer-

cise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, 96 S.Ct. at 1246 (1976), a district court must approach its decision "with the balance weighted heavily in favor of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed.2d 765 (1983).

■ But, where the federal action is one for declaratory relief, the "federal court's duty to exercise its jurisdiction is relaxed." *Fuller Company v. Ramon I. Gil, Inc.*, 782 F.2d 306, 309 n. 3 (1st Cir.1986).[5] In this context, "courts may dismiss ... on grounds that are less than exceptional." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 n. 11 (1st Cir.1990). Accordingly, the *Colorado River* analysis acquires a slightly different focus with respect to requests for declaratory judgment.

In a series of recent cases, the Fourth Circuit has established a framework for the above analysis. The seminal case, *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir.1992), involved a factual scenario nearly identical to the case at bar.[6] There, the Fourth Circuit

---

**2.** Wise's Essex Superior Court complaint asserts that Tonya Easler suffered from lead poisoning injuries between March 19, 1986 and April 11, 1989, while residing at two residences owned by Warren in Lynn, Massachusetts. Wise alleges that, under Massachusetts law, Warren is liable for the damages thereby suffered.

**3.** Pursuant to an agreement between USLIC, Warren and Ms. Wise (the "Agreement"), USLIC will pay Ms. Wise a sum certain in settlement of her State Action if this court determines USLIC has an obligation to indemnify.

**4.** The *Colorado River* Court identified several factors to guide district courts in this determination. The core factors, as supplemented by later courts, include:

(1) whether either court has assumed jurisdiction over a res; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law controls; and (6) whether the state forum will adequately protect the interests of the parties. *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991) (citations omitted).

Other factors that have been found to merit consideration are:

the vexatious or contrived nature of the federal claim ... and ... respect for the principles underlying removal jurisdiction.
*Burns*, 931 F.2d at 146 (citations omitted).

**5.** Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, federal district courts have discretion in deciding whether to hear a declaratory judgment action. *Fuller Company*, 782 F.2d at 309. The relevant portion of the Act reads as follows:

In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201 (emphasis added).

**6.** The Eastern District of Virginia, in another factually similar case, summarized the events in *Mitcheson* as follows:

"Nathan Harris owned a house in Baltimore, which he rented to Elizabeth Davis, legal guardian of the infant Charles Vines, in 1978. *Mitcheson v. Harris*, 955 F.2d 235, 236 (4th Cir.1992). Harris procured a liability insur-

declined to exercise jurisdiction over a federal declaratory judgment action regarding insurance coverage while the primary litigation was pending in state court. According to the *Mitcheson* court, as later interpreted by *Nautilus Insurance Company v. Winchester Homes Incorporated,* 15 F.3d 371 (4th Cir. 1994):

> when a federal court is confronted with an insurer's request for a declaratory judgment on coverage issues during the pendency of related litigation in the state courts, its discretion must be guided not only by the criteria outlined in [*Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321, 325 (4th Cir.1937)[7],] which focus on the general utility of the declaratory relief sought, but also by the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts.[8]

*Nautilus,* 15 F.3d at 376.

The Fourth Circuit then articulated several factors for district courts to consider in exercising their discretion. Specifically, the district court should evaluate:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state court; (2) whether the issues raised in the federal action can be more efficiently resolved in the pending state action; (3) whether the federal action might result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or of law; and (4) whether the federal action is being used merely as a device for 'procedural fencing,' i.e., to provide another forum in a race for *res judicata.*

*Continental Casualty Company v. Fuscardo,* 35 F.3d 963, 966 (4th Cir.1994) *citing Nautilus,* 15 F.3d at 377.

Guided by this Fourth Circuit caselaw and, more particularly, its holding in *Mitcheson,* this court will now assess the propriety of declining jurisdiction in the instant action.[9]

### A. The State's Interest

First, this court believes that there is a significant state interest in having the insur-

---

ance policy on the house from Lloyds of London. *Id.* The policy, like those involved in this case, defined a covered occurrence as 'an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured.' *Id.* In March of 1980, and again in 1981, Vines tested positive for elevated blood levels. *Id.* In February of 1989, Vines and Davis filed a complaint in state court, based solely on state law, against Harris. *Id.* After being notified of the claim, Lloyds' provided Harris with a defense, but under reservation of rights. *Id.* After the action had been filed in state court, Mitcheson, acting for Lloyds', filed a declaratory judgment action in federal court seeking a declaration that it was not obligated to defend or indemnify Harris. *Id.* Lloyds' argued that the lead poisoning was not an occurrence covered by the policy and that, even if it were, the alleged injuries fell within the pollution exclusion. *Id.*" *Monticello Insurance Company v. Baecher,* 857 F.Supp. 1145, 1147 n. 4 (E.D.Va.1994). This court, as in *Monticello* and in *Mitcheson,* is presented with the same issues: "when did the lead poisoning 'occur' and does it fall within the pollution exclusion." *Id.*

7. *Quarles* held that a federal district court should normally entertain a declaratory judgment action within its jurisdiction when it finds that the declaratory relief sought (i) " 'will serve a useful purpose in clarifying and settling the legal relations in issue,' " and (ii) " 'will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " *Quarles,* 92 F.2d at 325, *quoting* E. Borchard, *Declaratory Judgments* 107–109 (1934).

8. The *Nautilus* court, 15 F.3d at 377, further suggested that *Mitcheson* simply applied the longstanding rule first articulated in *Brillhart v. Excess Insurance Company of America,* 316 U.S. 491, 495, 62 S.Ct. 1173, 1175–76, 86 L.Ed. 1620 (1942): "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."

9. This court recognizes that the Fourth Circuit's analysis is not binding precedent. But, this framework runs substantially parallel to the *Colorado River* factors generally applied by the First Circuit in the declaratory judgment context. Moreover, as the Fourth Circuit's framework was developed in reaction to a factual scenario almost identical to that in the case at bar, this court believes it provides a more appropriately specialized examination.

ance coverage issues raised in the federal declaratory judgment action decided in the Massachusetts state courts.

As in *Mitcheson*, all the questions raised in the declaratory judgment action are governed by substantive state law. Moreover, the issues of Massachusetts law presented are "difficult" and "unsettled." *Nautilus*, 15 F.3d at 378 ("[w]e think ... a requirement that the state law issues be 'difficult' or 'unsettled' is implicit in *Mitcheson*"). In fact, the Supreme Judicial Court has not addressed the appropriate trigger for insurance coverage in the lead paint context.[10] Moreover, those few Massachusetts courts which have discussed the issue reach divergent conclusions. *See Massachusetts Property Insurance Underwriting Association v. Nichols*, C.A. No. 89–6470 (Suffolk Superior Court, Sept. 26, 1991); *United States Fidelity & Guaranty Co. v. Munroe*, C.A. No. 92–3545 (Middlesex Superior Court, Jan. 13, 1993). Given these circumstances, the state courts are "better equipped to create [Massachusetts] law which will be consistent with [this State's] public policy." *Monticello Insurance Company v. Baecher*, 857 F.Supp. 1145, 1149 (E.D.Va.1994).

B. *Efficiency of the State Court*

This court is also of the opinion that the issues raised in the federal declaratory judgment action can be more efficiently resolved by the Massachusetts courts.

When assessing efficiency concerns such as those in the case at bar, federal courts should determine " 'whether the questions in controversy between the parties to the federal suit ... can better be settled in the proceeding[s]' that are already 'pending in the state court[s].' " *Nautilus*, 15 F.3d at 378, *quoting Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 495, 62 S.Ct. 1173, 1176, 86 L.Ed. 1620 (1942). This inquiry, in turn, demands scrutiny of " 'the scope of the pending state court proceeding[s],' including such matters as 'whether the claims of all

parties in interest [to the federal proceeding] can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding.' " *Nautilus*, 15 F.3d at 379, *quoting Brillhart*, 316 U.S. at 495, 62 S.Ct. at 1176 (1942).

In the present case, the plaintiff is not a party to the underlying State Action. Furthermore, it is not clear that the plaintiff could properly be joined or intervene below. But, the plaintiff can bring a separate declaratory judgment action in state court, *see* Mass.Gen.L. ch. 231A; *Crompton v. Lumbermens Mutual Casualty Co.*, 334 Mass. 207, 135 N.E.2d 14, 16 (1956); *Barnstable County Mutual Fire Insurance Company v. Lally*, 374 Mass. 602, 373 N.E.2d 966 (1978), to be subsequently consolidated with the existing State Action. *See Worcester Insurance Company v. Fells Acres Day School, Inc.*, 408 Mass. 393, 558 N.E.2d 958 (1990); *Samagaio v. Davidson*, 6 Mass.App. 773, 384 N.E.2d 210 (1979). Such a procedural posture would achieve the favorable goal of "resolving all litigation stemming from a single controversy in a single court system." *Mitcheson*, 955 F.2d at 239.

Although dismissal is not appropriate simply because the issues involved here could be brought in state court, "a federal court may properly decline to entertain a declaratory judgment action because of the availability of another adequate remedy ... [which is] a 'more effective or efficient' means of resolving the controversy." *Nautilus*, 15 F.3d at 379. Here, as in *Mitcheson*, there is the potential for significant inefficiencies if the federal case is allowed to proceed. "For example, if a federal court were to render a declaration that the insurer had no duty to defend, the ongoing state litigation could be delayed considerably due to time consuming substitution of counsel. Similarly, a federal declaration that an insurer had no duty to indemnify could be rendered totally unneces-

10. Because the Supreme Judicial Court has recently interpreted a standard pollution exclusion clause in the lead paint context, *see Atlantic Mutual Insurance Company v. McFadden*, 413 Mass. 90, 595 N.E.2d 762, 764 (1992) (lead paint not a "pollutant" within scope of pollution ex-

ception where personal injury caused by presence of lead paint in household), the appropriate insurance coverage trigger, and not the interpretation of the "absolute pollution" exclusion, would likely be the determinative issue.

sary by a subsequent state verdict for the insured in the underlying [State Action]." *Mitcheson,* 955 F.2d at 239.[11] Moreover, "the prospects for coordinated management and alleviation of abrasion are greater when litigation is handled under one jurisdictional roof." *Mitcheson,* 955 F.2d at 239. Consolidated state proceedings appear preferable to parallel state and federal disputes.[12]

### C. *Unnecessary Entanglement*

Next, the court must ask whether permitting the federal action to continue would result in the unnecessary entanglement of state and federal court systems. Due to the overlapping issues of law and fact in the federal and state actions, this court finds that such entanglement would be inevitable. For example, resolution of the federal declaratory action would require the court to determine when Tonya Easler's lead poisoning took place. Wise may be collaterally estopped from relitigating this issue in the underlying State Action. "A system of judicial federalism has enough inherent friction without the added aggravation of unnecessary federal declarations on questions such as those at issue here." *Mitcheson,* 955 F.2d at 240.

### D. *Procedural Fencing*

Finally, although this court has no reason to believe that the parties are involved in procedural fencing, considerations of federalism, efficiency and comity, as outlined above, outweigh the federal policy in favor of declaratory relief. The unresolved questions of Massachusetts law can best be resolved by the state courts, which are most familiar with

11. The Agreement described in footnote 3 does not relieve these potential inefficiencies. The parties agreed to settle only if the court found *against* USLIC.

12. The *Nautilus* case is distinguishable on this point.

In *Nautilus,* the Fourth Circuit found that a new state action for declaratory relief would not be a "more effective or efficient" means of resolving the dispute. Central to this holding, however, was the advanced procedural stage of the federal action; "[a]t the time the motion to dismiss [the] declaratory action [in *Nautilus* ] was made, it was less than a week away from trial, and the district court had already made

the underlying State Action and the important public policy issues at stake.[13]

### III.

### *Conclusion*

For the foregoing reasons, this court declines to exercise jurisdiction over the present federal declaratory judgment action. The case is DISMISSED without prejudice to the parties' right to refile in the appropriate state court.

final decisions on the merits of a number of the claims being asserted, which the district court conceded had 'go[ne] a long way to resolving the coverage issue.'" *Nautilus,* 15 F.3d at 379. In the present case, no such investment of judicial resources has been made. Specifically, the parties have never appeared before the court and no discovery has been ordered.

13. Application of the *Colorado River* factors yields the same result. Specifically, the undesirable effects of piecemeal litigation, the state court's earlier jurisdiction, the controlling issues of state law, and the state court's ability to protect the parties' interests outweigh the federal forum's convenience and the legitimate nature of the federal suit.