FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., Plaintiff,

v.

Patricia T. HOLT, Administrator of the Estate of Laurie Ann Holt, Deceased, and Eddie J. Sharpe, II, and State Farm Mutual Automobile Insurance Company, and Ruby J. Sharpe, and Balboa Life & Casualty Company, Defendants.

Eddie J. SHARPE, II and Ruby J. Sharpe, Defendants and Third–Party Plaintiffs,

v.

FIRST VIRGINIA INSURANCE SERVICES, INC., Third–Party Defendant.

No. CIV. A. 3:97CV375.

United States District Court, E.D. Virginia, Richmond Division.

April 7, 1998.

Gary J. Spahn, Mays & Valentine, Richmond, VA, for Fidelity and Guar. Ins. Underwriters, Inc.

Raymond James Sinnott, III, Sinnott, Nuckols & Logan, Midlothian, VA, for Patricia T. Holt.

James Edward Moore, Christian, Barton, Epps, Brent & Chappell, Richmond, VA, for Eddie J. Sharpe, II, Ruby J. Sharpe.

Theodore Ira Brenner, Brenner, Dohnal, Evans & Yoffy, Richmond, VA, for State Farm Mut. Ins. Co.

Derrick Thomas, Cowan & Owen, P.C., Richmond, VA, for Balboa Life & Cas. Co.

William Francis Drewry Gallalee, William Frederick Jones, Calvin Wooding Fowler, Jr., Williams, Mullen, Christian & Barton, Richmond, VA, for First Virginia Ins. Services, Inc.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on a complaint seeking declaratory relief filed on May 14, 1997 by plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. ("Fidelity") relief against Patricia T. Holt, Eddie J. Sharpe, II, State Farm Mutual Automobile Insurance Company, Ruby J. Sharpe and Balboa Life & Casualty Company ("the defendants"). Fidelity claims that it owes no duty to defend or to indemnify Eddie J. Sharpe, II in an action at law arising from an automobile accident occurring on or about September 23, 1997 in which the decedent Laurie Ann Holt was killed.

Although the complaint did not originally name First Virginia Insurance Services, Inc.

("First Virginia") as a party defendant, on December 1, 1997 plaintiff and defendants entered into an Agreed Order deeming it just and proper that First Virginia should be joined as a defendant in the case. On January 13, 1998 defendants and third-party plaintiffs Eddie J. Sharpe and Rudy J. Sharpe filed a third-party complaint for declaratory relief against First Virginia. First Virginia filed a motion on February 6, 1998 to dismiss the third-party complaint for declaratory relief and by March 2, 1998 the Court received separate briefs in opposition to this motion filed by Fidelity, defendants Eddie J. Sharpe, II and Ruby J. Sharpe ("the Sharpes"), and defendant Patricia T. Holt.

Fidelity filed this action pursuant to the Declaratory Judgment Act (the "Act") which states in relevant part that:

> In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.[1]

The Act does not impose a mandatory obligation on the federal courts to make such declarations of right,[2] but it is well established that a district court's decision to entertain a claim for declaratory relief is discretionary.[3] In the words of the Supreme Court, this law is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."[4] The Fourth Circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief. In fact, this discretion was acknowledged as far back as 1937 when the Fourth Circuit declared that the decision to grant or deny a petition for declaratory relief "is a matter resting in the sound discretion of the trial court."[5]

---

1. 28 U.S.C. § 2201 (1994).

2. *Nautilus Ins. Co. v. Winchester Homes*, 15 F.3d 371, 375 (4th Cir.1994).

3. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 290, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

4. *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

5. *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937).

The *specific* factors guiding district courts today when they decide whether or not to exercise jurisdiction over a declaratory judgment action also have their origin in *Quarles.* In that case the Fourth Circuit noted that a declaratory judgment action should not be used "to try a controversy by piecemeal, or to try particular issues without settling the entire controversy, or to interfere with an action which has already been instituted." [6]

In 1992 the Fourth Circuit decided *Mitcheson v. Harris,*[7] a case involving a scenario remarkably similar to the case at hand. In *Mitcheson,* an insurer sought declaratory judgment in federal district court on coverage issues while the underlying litigation against its insured was pending in state court. The Fourth Circuit held that the district court must not only exercise its discretion within the contours of the *Quarles* case, but must also take into account considerations of federalism, efficiency, and comity when determining whether it will grant jurisdiction over the declaratory judgment action.[8] Specifically, the *Mitcheson* court suggested that these additional concerns might require the district court to consider:

(1) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (2) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; and (3) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of overlapping issues of fact or law.[9]

A final element of consideration that district courts have been directed to factor into their jurisdictional determinations in declaratory judgment cases was introduced by the Fourth Circuit in *Nautilus Insurance Co. v. Winchester Homes, Inc.*[10] In that case, the Fourth Circuit directed district courts to consider "whether the declaratory judgment action is being used merely as a device for 'procedural fencing'—that is, to provide another forum in a race for res judicata' or 'to achiev[e] a federal hearing in a case otherwise not removable.'"[11]

In a 1942 decision, the Supreme Court prophetically asserted what today has become a benchmark predisposition among federal courts in declaratory judgment cases. In *Brillhart v. Excess Ins. Co.* it stated that "[a]lthough the District Court had jurisdiction ... under the Federal Declaratory Judgments Act, it was under no compulsion to exercise that jurisdiction."[12] The Fourth Circuit explained that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not-governed by federal law, between the same parties."[13]

■ It is well established, therefore, that in making a jurisdictional determination in this case the Court may look to a plethora of elements to determine whether Fidelity is worthy of declaratory relief in this case. When the Court applies the law to the facts and circumstances in this case it is abundantly clear that several interests weigh in favor of dismissal.

■ In regards to state interests, there are two principal concerns that are best served by dismissal of declaratory judgment actions. The first is the compelling interest of allowing states to decide questions of state law. The second is an overarching state interest in resolving all litigation stemming from a single controversy in a single court system.[14] In regards to interests of federal import, dismissal of this declaratory action is supported by interests of comity, judicial efficiency, and the discouragement of procedural posturing or 'forum shopping' in cases such

**6.** 92 F.2d at 325.

**7.** 955 F.2d 235 (4th Cir.1992).

**8.** *Mitcheson,* 955 F.2d at 237–40.

**9.** *Id.*

**10.** 15 F.3d 371 (4th Cir.1994).

**11.** *Id.* at 377.

**12.** 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

**13.** *Id.*

**14.** *Mitcheson,* 955 F.2d at 237, 239.

as this which lack any level of federal significance.

A major state interest supporting dismissal of the declaratory action is the state's interest in deciding questions of state law—an interest that not surprisingly has its jurisprudential roots in *Erie R.R. Co. v. Tompkins.*[15] The factual disposition of the case at hand brings neither a federal law nor a federal interest to bear on the Court. Rather, the facts show that Virginia law provides the only calipers by which the merits of the case can be properly measured. The facts that speak to this are several. The insurance policy allegedly issued by First Virginia, Fidelity's purported agent, occurred in Falls Church, Virginia. Moreover, any duties owed by First Virginia to the Sharpes would be determined by Virginia law. Finally, any claims brought by the Holt estate against the Sharpes are determinable in their totality under Virginia law—both as to liability and damages.

As established by *Erie* and its progeny, "state law ordinarily provides the rule of decision in pure diversity cases."[16] While there are countless examples of federal courts interpreting state law and vice versa, there is an understanding among federal courts that "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."[17]

Given the pendant state court proceeding on the primary claims of this case and the exclusively state law nature of the declaratory action, the Court is compelled by the state interest in resolving matters of state law to decline discretionary jurisdiction in this matter. The Court would regard a ruling in the alternative as a breach of legitimate state interests and possibly an unnecessarily intrusive exercise of judicial discretion. The Fourth Circuit in *Mitcheson* put it quite plainly when it stated that "[a]bsent a strong countervailing federal interest, the federal court here should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law."[18]

The second significant state interest supporting dismissal of the declaratory action is that of resolving all litigation stemming from a single controversy in a single court system. While the aforementioned interest of a state in resolving for itself questions of state law is grounded in the philosophy of judicial federalism, this second interest is grounded in the equally important pragmatic concerns of efficiency and comity.[19]

To allow separate suits stemming from the same overall controversy and involving overlapping issues would require the marshaling of tremendous judicial resources. The inefficiencies that would result are easily imaginable. For instance, a declaration by this Court that Fidelity had no duty to indemnify could be rendered unnecessary by a state verdict for the insured in the underlying state action. In *Indemnity Ins. Co. v. Schriefer,* the Fourth Circuit faced a similar set of facts and approved the dismissal of a declaratory action on the grounds that the duty-to-indemnify question could be answered after the parallel state court litigation was concluded.[20]

■ It is well established that when a federal court determines whether to entertain a declaratory judgment action, it should analyze whether its resolution will settle all aspects of the legal controversy. In the case at hand, it is abundantly clear that no resolution by this Court will settle all aspects of the conflict. As of now, no judgment has been obtained by the Holt administrator against Sharpe, and therefore, no claim for indemnity can be asserted by the Sharpes against Fidelity. It is only after the Holts obtain a judgment against Sharpes that it may proceed to act in concert with the judgment debtor to bring a garnishment proceeding against Fidelity.

---

**15.** 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**16.** *Mitcheson,* 955 F.2d at 237.

**17.** *Id.*

**18.** *Id.* (quoting *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 122 n. 32, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).

**19.** *Id.* at 239.

**20.** 142 F.2d 851, 853 (4th Cir.1944).

In addition to the inefficiencies that this premature declaratory action promises to create in the case at hand, the Court finds that entertaining the action would unnecessarily entangle the federal and state court systems. The Fourth Circuit has long recognized the interest in promoting comity between federal and state courts. It held that "[a]n important element in fostering [a] spirit of cooperation and respect must be a reluctance on the part of federal courts to entertain a declaratory action that could result in entanglement between the two court systems." [21] Such entanglement is particularly dangerous when overlapping issues of fact or law between the state and federal actions cause certain issues to be precluded once they are addressed by a federal court. In the words of the Fourth Circuit, such issue preclusion "will likely 'frustrate the orderly progress' of state court proceedings by leaving the state court with some parts of a case foreclosed from further examination but still other parts in need of full-scale resolution." [22]

Simply stated, federal courts are reluctant to entangle themselves with declaratory judgment actions that will create more conflict than they will remedy. The Fourth Circuit has asserted that "[a] system of judicial federalism has enough inherent friction without the added aggravation of unnecessary federal declarations." [23]

█ In spite of these admonitions, Fidelity is not without potential avenues of recourse. Whereas a declaratory judgment by this Court will serve to preclude more issues than it will actually resolve, a declaratory judgment proceeding by Fidelity in *state* court is perhaps the most advisable step Fidelity could take. Under Virginia law, Fidelity can bring a declaratory judgment proceeding in state court against any and all of the named parties, and remain eligible to receive relief under all meritorious claims—including claims that could never be litigated in federal court in any direct action. Moreover, state declaratory judgment proceedings are neither subject to discretionary disposition by the judge nor limited in scope as they are in the federal courts.

In addition to finding a myriad of flaws inherent in Fidelity's declaratory judgment action, the Court also finds that Fidelity is using the action as a device to advance its position in a race for res judicata and to achieve a federal hearing in a case otherwise not removable. The facts before the Court regarding the pending state court proceeding in Charlotte County Circuit Court manifest clearly that Fidelity has refused to indemnify as well as defend the Sharpes in the tort case pending against them in state court. The Court has also learned from counsel that a trial date in the pendant state court proceeding in Charlotte County Circuit Court may be set *up to four months* from the date of this Memorandum Opinion and Order.

Because courts in the Eastern District of Virginia adjudicate cases in an extremely efficient manner, it is likely that if the Court were to exercise jurisdiction over the declaratory judgment complaint in this case, it would do so long before the parallel state case is resolved. What the filing of Fidelity's declaratory judgment petition represents, therefore, is a form of 'procedural fencing'—a self-interested strategy adopted by Fidelity in an attempt to shield it from potential exposure in the state court. The law is clear that this manner of posturing certainly should not be promoted in the federal courts and moreover, may affect a court's decision to decline declaratory judgment jurisdiction.[24]

### CONCLUSION

For the reasons articulated above, the Court declines to exercise jurisdiction over the declaratory judgment complaint in this case. The case is DISMISSED WITHOUT PREJUDICE as to all parties until such time as the parallel state court proceeding is resolved.

It is so ORDERED.

**21.** *Mitcheson*, at 239.

**22.** *Id.* (quoting *Phoenix Ins. Co. v. Harby Marina, Inc.*, 294 F.Supp. 663, 664 (N.D.Fla.1969)).

**23.** *Id.* at 240.

**24.** *Nautilus*, 15 F.3d at 377; 6A J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice*, ¶ 57.08[5] (2 ed.1993).

### FINAL ORDER

This matter is before the Court on a complaint seeking declaratory relief filed on May 14, 1997 by plaintiff Fidelity and Guaranty Insurance Underwriters, Inc. against Patricia T. Holt, Eddie J. Sharpe, II, State Farm Mutual Automobile Insurance Company, Ruby J. Sharpe and Balboa Life & Casualty Company.

This matter is also before the Court on a third-party complaint for declaratory relief filed on January 13, 1998 by defendants and third-party plaintiffs Eddie J. Sharpe and Rudy J. Sharpe against First Virginia Insurance Services, Inc..

For reasons set forth in the Memorandum Opinion accompanying this Final Order, all requests for declaratory relief are denied and the case is DISMISSED WITHOUT PREJUDICE as to all parties until such time that the parallel state court proceeding is resolved.

It is so ORDERED.