**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

New Wellington Financial
Corporation,
                    *Plaintiff-Appellant,*

            v.

Flagship Resort Development
Corporation; First Flagship
Financial Services Corporation,                    No. 04-2216
                    *Defendants-Appellees,*

            and

Atlantic Palace Development,
L.L.C.,
                    *Defendant.*

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CA-03-74)

Argued: May 25, 2005

Decided: July 21, 2005

Before MOTZ and GREGORY, Circuit Judges,
and HAMILTON, Senior Circuit Judge.

---

Affirmed by published opinion. Judge Gregory wrote the opinion, in
which Senior Judge Hamilton joined. Judge Motz concurred in the
judgment.

---

**COUNSEL**

**ARGUED:** Thomas E. Albro, TREMBLAY & SMITH, Charlottesville, Virginia, for Appellant. Dennis Alan Richard, RICHARD & RICHARD, P.A., Miami, Florida, for Appellees. **ON BRIEF:** Joseph D. Pope, Nicole Tuman, COHEN POPE, P.L.L.C., New York, New York; M. E. Gibson, Jr., Patricia D. McGraw, TREMBLAY & SMITH, L.L.P., Charlottesville, Virginia, for Appellant. Patrick C. Asplin, KEELER OBENSHAIN, P.C., Harrisonburg, Virginia, for Appellees.

---

**OPINION**

GREGORY, Circuit Judge:

This appeal requires us to determine whether personal jurisdiction exists over an out-of-state defendant and, if so, whether the district court could decline to exercise jurisdiction. Because the district court was entitled to exercise its discretion to decline to hear a declaratory judgment action in light of a parallel state-court case, we affirm.

I.

Flagship Resort Development Corp., First Flagship Financial Services Corp. (together, "Flagship"), and Atlantic Palace Development, L.L.C. ("Atlantic Palace") operate timeshare resorts in New Jersey. According to New Wellington Financial Corp. ("Wellington"), Flagship and Atlantic Palace mailed consumer credit applications, credit reports, and collateral from outside Virginia to Wellington's Virginia headquarters every week from 1993 to 2003. Wellington reviewed and processed these credit documents on behalf of lenders including Liberty Bank ("Liberty") and Finova Capital Corp. ("Finova"), among others (collectively, "the lenders"). With Wellington's aid, Flagship and Atlantic Palace secured financing from the lenders for their resorts.

In June 2003 a sharp disagreement arose between the parties. Flagship and Atlantic Palace confronted Wellington with allegations that

Wellington violated its duty as their agent by taking undisclosed payments from the lenders. On June 13, 2003, Flagship and Atlantic Palace sent a letter from New Jersey to Finova's headquarters in Arizona. The letter sought Finova's cooperation with Flagship and Atlantic Palace's investigation of the allegedly undisclosed payments and requested that, in the interim, Finova cease payments to Wellington relating to their loans. Five days later Flagship and Atlantic Palace also wrote to Liberty, in Connecticut. The letter told Liberty that Flagship and Atlantic Palace would no longer be working with Wellington. That same day Flagship informed Wellington by letter that they would terminate their relationship with Wellington, requested a list of the dates, amounts and form of all payments received from the lenders, and stated that they would seek return of all fees paid by the lenders on their loans. Wellington insists that it has never acted as Flagship's or Atlantic Palace's agent or broker or taken improper payments from lenders.

Wellington filed its initial complaint on August 13, 2003. It sought a declaratory judgment that no agency relationship existed between the parties and that it owed Flagship and Atlantic Palace no money that it had received from the lenders. A month later Wellington amended its complaint by adding a claim against Flagship for tortious interference with Wellington's agreement with Liberty and by dropping Atlantic Palace to preserve complete diversity, which was the sole basis for subject-matter jurisdiction.[1] Both complaints asserted personal jurisdiction because the action arose "from the transaction of business in this state and from the commission of torts outside this state causing injury in this state." J.A. 12, 32.

Between the filing of Wellington's initial and amended complaints, Flagship and Atlantic Palace sued Wellington, Finova, and two of Wellington's officers in New Jersey state court. Flagship and Atlantic Palace alleged, among other things, fraud, commercial bribery, violation of New Jersey racketeering law, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fidu-

---

[1]Flagship is incorporated in both New Jersey and Florida. Atlantic Palace is a limited liability company whose citizenship is ultimately uncertain from the record because of its abbreviated presence in this suit.

ciary duty. The parties agree that the conduct underlying the two cases is identical.

On April 30, 2004, Flagship filed motions to dismiss the Virginia case because of the parallel New Jersey suit and for lack of personal jurisdiction. In its brief opposing Flagship's motion to dismiss for lack of personal jurisdiction, Wellington argued that personal jurisdiction existed only under Va. Code Ann. § 8.01-328.1(A)(4) ("subsection 4"),[2] not § 8.01-328.1(A)(1) ("subsection 1").[3] At the oral argument, however, Wellington changed course and argued both subsections 1 and 4 of Virginia's long-arm statute. Only on August 18, 2004 — over three months after filing its opposition brief and the court's deadline for reply briefs, after oral argument, and the day before the court issued its opinion — did Wellington put the subsection 1 argument to paper, in a "supplemental memorandum of law" that Wellington admits to us was untimely and unauthorized.

Wellington acknowledged in both its May 14, 2004 brief opposing the motion to dismiss and at the August 13, 2004 oral argument on the motion before the district court that it had released the claim for tortious interference with Liberty's contract because of settlement. At the oral argument on the motions to dismiss Wellington also claimed it would amend its complaint again to allege tortious interference with Wellington's contract with Finova. Despite its claim, and despite the fact that it must have been aware of any alleged tortious interference at least three months before the oral argument, when it submitted a declaration of its president containing the information Wellington

---

[2]This subsection provides jurisdiction over a person as to:

> a cause of action arising from the person's . . . [c]ausing tortious injury in this Commonwealth by an act or omission outside the Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth[.]

Va. Code Ann. § 8.01-328.1(A)(4).

[3]This subsection confers jurisdiction over a person as to "a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(1).

claims states a claim of tortious interference,[4] Wellington never submitted a motion for leave to amend.

On August 19, 2004, the district court dismissed the case. The court held that because Wellington withdrew the claim that Flagship tortiously interfered with Wellington's contract with Liberty and because Wellington never filed any motion seeking to amend the complaint to add the Finova contract claim, the only claim remaining was the request for a declaration of the nature of the parties' relationship. The court found that because Wellington only argued jurisdiction under subsection 4 of Virginia's long-arm statute, which requires an allegation that the defendant caused an actual tortious injury, and because no claim of tortious injury remained, personal jurisdiction did not exist. The court then explained that even if jurisdiction were proper, it would exercise its discretion not to hear the declaratory judgment action in light of the New Jersey state-court suit. This appeal followed.

## II.

We first address whether personal jurisdiction existed over Flagship. We review this legal question *de novo*, but review any underlying factual conclusions for clear error. *See ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002) (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002)).

## A.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence. *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). "But when, as here, the court addresses the question on the basis only of motion papers, supporting legal memoranda and the rel-

---

[4]Specifically, the declaration stated in relevant part that, "FINOVA has renegotiated its loan agreements with Defendants and with Atlantic Palace. The renegotiated loan agreements enabled Defendants and with [sic] Atlantic Palace to prepay their respective loans, which has resulted in reduced fees to Wellington from FINOVA." J.A. 162 (emphasis added).

evant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*; *see also In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Under such circumstances, courts "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676; *see also Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004).[5]

Because federal courts exercise personal jurisdiction in the manner provided by state law, we first decide whether Virginia state law authorizes jurisdiction over the defendant; if so, we then must determine whether exercise of such jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997); *see also Mitrano*, 377 F.3d at 406. Virginia law provides in relevant part that:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:
>
> 1. *Transacting any business* in this Commonwealth;
>
> . . . .
>
> 4. *Causing tortious injury* in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth
> . . . .

---

[5]However, "[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *Production Group Int'l v. Goldman*, 337 F. Supp. 2d 788, 793 n.2 (E.D. Va. 2004) (citation omitted).

Va. Code. Ann. § 8.01-328.1(A) (emphasis added). Virginia, like other states, expands its specific grants of personal jurisdiction as far as the Due Process Clause allows. *See Peninsula Cruise, Inc. v. New River Yacht Sales, Inc.*, 257 Va. 315, 319 (1999).[6]

Wellington only alleges specific, not general, jurisdiction. We have synthesized the requirements of the Due Process Clause for asserting specific jurisdiction into a three-part test. Specifically, we consider: "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable.'" *Mitrano*, 377 F.3d at 407 (quoting *ALS Scan, Inc.*, 293 F.3d at 712).

### B.

Wellington now attempts to argue that specific personal jurisdiction exists under both subsections 1 and 4 of Virginia's long-arm statute. But the subsection 1 argument was never properly presented. Here, some three months after briefing on the motion, Wellington decided to adopt a different theory of personal jurisdiction at oral argument from the only one argued in its brief. Then, after oral argument and the day before the court issued its decision, Wellington submitted the subsection 1 argument in an unauthorized and untimely "supplemental memorandum." The court was fully within its rights to prevent this ambush.[7] District courts have the inherent authority —

---

[6]It is nonetheless still possible "'for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of a Virginia long-arm statute provision.'" *Bochan v. LaFontaine*, 68 F. Supp. 2d 692, 698 (E.D. Va. 1999) (quoting *Telco Communications v. An Apple A Day*, 977 F. Supp. 404, 405 (E.D. Va. 1997)); *see also Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir. 1985). Virginia's specific grants of jurisdiction are not meaningless. Moreover, plaintiffs who assert jurisdiction under only one provision of the long-arm statute cannot obtain jurisdiction under an unclaimed provision.

[7]*See, e.g.*, *Skipper v. Giant Food, Inc.*, 68 Fed.Appx. 393, 396 n.3 (4th Cir. 2003) ("After all papers were filed in the district court and the parties had conducted oral argument, plaintiffs' counsel filed a supplemental

and in fact the duty — to manage cases by setting time limits for the filing of motions. An inseparable corollary is that the court can ignore arguments forfeited because they are not presented consistent with the court's time limits. So it is clear that Wellington can only contend personal jurisdiction exists under subsection 4.

As the district court also recognized rightly, Wellington plainly released the only tortious interference with contract claim made in its amended complaint because of settlement in both its brief opposing the motion and at oral argument on the motion. Wellington contends that the district court should have read the complaint and the May 13, 2004 declaration by Wellington's president in a manner that somehow constructed a new and separate claim for tortious interference with Wellington's contract with Finova. We disagree. Over three months of time passed after Wellington filed the declaration of its president which, it claims, contained a sufficient basis for belief that a new tortious interference claim existed. Yet throughout this time Wellington never moved for leave to amend its complaint so as to add a new tortious interference claim.[8] Given this inexplicable failure to amend during this extensive opportunity, it was perfectly reasonable for the district court to find that Wellington had not and either could not or would not allege a new claim of tortious interference.[9]

---

memorandum. . . . Finding that the memorandum had not been filed in a timely manner, the district court declined to address. . . [it] and we decline to do so as well."); *OV Foy v. Norfolk & Western R. Co.*, 377 F.2d 243, 246 (4th Cir. 1967) (where plaintiff offered no timely response to motion for summary judgment and no explanation for that failure, district court did not abuse its discretion in granting summary judgment for defendant; district court's decision to deny late motion was not an abuse of discretion).

[8]At oral argument Wellington stated that "[a]nd now we're seeking, we will be seeking, Judge, to amend it to encompass the claim of tortious interference with a different bank that they've interfered with." J.A. 257. Yet as the district court held, Wellington never filed this promised motion to amend "and given the absence of such a motion the Court cannot find that [ ] Wellington's hypothetical proposed amendment is proper or that such an amendment would create jurisdiction." J.A. 284.

[9]Wellington argues to us that "mere lateness or delay in seeking leave to amend are not, by themselves, reasons to deny amendment," Appel-

Wellington's remaining argument is that under subsection 4 its declaratory judgment action arises from a tortious injury. Wellington submits that, even without the tortious interference with contract claim, it alleged a tortious injury in the amended complaint with the truncated claim that Flagship's correspondence with Finova "disparages Wellington in its trade and business." J.A. 34. While this assertion is rather cursory, when we construe the complaint in the light most favorable to the plaintiff, *see Combs*, 886 F.2d at 676, and recognize the minimal requirements of the notice-pleading regime, *see* Fed. R. Civ. P. 8(a), (e)(1), and (f), as we must, it is fair to say that this allegation could be shaped into an allegation of the tort of defamation.[10] We will thus assume that the declaratory judgment claim can satisfy subsection 4 by "arising from" this tort, thus satisfying Virginia law. Because, as explained below, we resolve this appeal by

---

lant's Br. at 25. True enough, but this is insufficient to carry the day where, as here, counsel never properly moved for amendment. That Wellington managed to hide an alternative request to amend the complaint in what it admits to us is an untimely and unauthorized "supplemental memorandum of law" opposing the motion to dismiss is of no moment. Filing a motion for leave to amend is not difficult — Wellington already did it once in this case, and could have done so again easily. Improperly filed briefs are a nullity and counsel should expect courts to ignore suggestions tucked inside such papers.

[10]In contrast with other arguments in this case, Wellington preserved the defamation argument. The argument was made in Wellington's response to the motion to dismiss, *see* J.A. 308-310, and to the district court at oral argument. At oral argument before the district court Wellington stated that "letters were sent that were demeaning, derogatory, and defaming of Wellington, and those letters were sent by Flagship from New Jersey to other places. That's a tort. There's a tort of business defamation and there was a tort of interference with business relations." J.A. 246. Subsequently, Wellington stated that "[w]e have, in our original and amended claim, we alleged business defamation. We didn't set it out as a separate count, but it is alleged." J.A. 247. We note that in Virginia false, publicized statements that "prejudice a person in his or her profession or trade" are defamatory *per se*, and "a defamatory charge need not be made in direct terms; rather, it may be made 'by inference, implication[,] or insinuation.'" *Perk v. Vector Resources Group, Ltd.*, 253 Va. 310, 316 (1997) (citing *Carwile v. Richmond Newspapers*, 196 Va. 1, 7 (1954)).

holding that the district court did not abuse its discretion by refusing to entertain the declaratory judgment action in light of the New Jersey suit, we will also assume without analysis that jurisdiction would satisfy the familiar due process requirements.

### III.

But this does not end things. "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995); *see also Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494-95 (1942) (district courts are "under no compulsion" to exercise jurisdiction over declaratory judgment action). "This circuit has long recognized the discretion afforded to district courts in determining whether to render declaratory relief," *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421-22 (4th Cir. 1998). Accordingly, we review a district court's decision to decline to exercise such jurisdiction for an abuse of that discretion. *Id.* at 421 (citing *Wilton*, 515 U.S. at 290).

This discretion, while not unbounded, is especially crucial when, as here, a parallel or related proceeding is pending in state court. *See Brillhart*, 316 U.S. at 495 (district court considering hearing a declaratory judgment action "should ascertain whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court."). In such situations federal courts must weigh "'considerations of federalism, efficiency, and comity.'" *United Capitol Ins. Co. v. Kapiloff* 155 F.3d 488, 493 (4th Cir. 1998) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)); *see also Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004). As the Supreme Court explained:

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and compre-

hensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495. These considerations led us to require the consideration of four factors when deciding whether to hear a declaratory judgment action when a related state-court proceeding exists:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Kapiloff*, 155 F.3d at 493 (quoting *Nautilus Ins.*, 15 F.3d at 377); *see also Penn-America Ins. Co.*, 368 F.3d at 412.

Applying these guidelines to this case, we do not believe the district court abused its discretion when it held that it would have declined to exercise jurisdiction.

First, we agree with the district court that New Jersey has a strong interest in having the dispute resolved in its courts. The conduct at issue in these two suits involves and concerns New Jersey companies, writing letters from New Jersey, regarding loans for New Jersey property. In addition to the parties, actions, and property implicated, Flagship and Atlantic Palace's complaints in the New Jersey suit exclusively involve claims based in New Jersey state law, several of which can fairly be called complex, including those for "commercial bribery," New Jersey RICO, and conspiracy to violate New Jersey RICO.[11] As we explained in *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992), "[t]here exists an interest in having the most authoritative voice speak on the meaning of applicable law, and that voice belongs to the state courts when state law controls the resolution of the case."

---

[11]We pause to make clear that insofar as Wellington seeks to assert in this action that it has a good defense to Flagship's New Jersey action, it is entirely proper to look to Flagship's New Jersey claims.

*Id.* at 237. Likewise, Wellington asserts no claims under federal law. As we said in *Mitcheson*, "[a]bsent a strong countervailing federal interest, the federal court here should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law." *Id.* at 238 (citation omitted).

Second, the New Jersey state court can resolve the matter more efficiently. Other parties present there apparently could not be joined in this case without destroying subject-matter jurisdiction. In the New Jersey case, Finova and two of Wellington's principals are named as defendants. Wellington first removed the New Jersey case to New Jersey federal district court but then filed a suggestion of remand, because it believed one of the individual defendants was not diverse from all of the members of Atlantic Palace. Remand was granted. Moreover, Wellington first joined Atlantic Palace as a defendant to this case, which evidences Wellington's belief that Atlantic Palace is a proper party, if not a necessary one. But Wellington's counsel has represented to the court that Atlantic Palace's presence in this case would destroy complete diversity of the parties.[12] Besides the parties present in New Jersey and absent here, it is easy to believe that the New Jersey state court could resolve the New Jersey state law issues alleged by Flagship and Atlantic Palace more efficiently than could a federal court sitting in Virginia. We have previously found that the presence of other parties and issues in the state action not present in the federal declaratory judgment action is "particularly salient," and we also find that to be the case here. *See Centennial Life Ins. Co. v. Posten*, 88 F.3d 255, 257 (4th Cir. 1996). Indeed, if the district court heard the case *without* the other parties and without addressing Flagship's state-law claims as counter-claims, then this could indeed cause "excessive entanglement" by resolving the dispute in a piecemeal and inefficient fashion.[13]

---

[12]Now Wellington's counsel claims that it erred in representing that Atlantic Palace would destroy diversity in this case, and that Atlantic Palace is indeed diverse and could be re-joined to this suit. Litigation cannot proceed in this fashion; at some point an attorney's representation must have consequences.

[13]Like the district court, we do not suggest that the filing of this action was "mere procedural fencing."

IV.

Given all this, we cannot conclude that the district court abused its discretion in deciding to decline to hear this declaratory judgment action if personal jurisdiction existed. Clear as day, considerations of "federalism, comity, and efficiency," *Penn-America Ins. Co.*, 368 F.3d at 412, counsel against running this action simultaneously with the New Jersey lawsuit. Accordingly, after careful consideration we conclude that the district court's decision to dismiss is

*AFFIRMED.*