**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————

**No. 09-1044**

—————

RONALD J. RILEY,

        Plaintiff – Appellant,

    v.

DOZIER INTERNET LAW, PC; JOHN DOZIER,

        Defendants – Appellees.

—————

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Henry E. Hudson, District Judge. (3:08-cv-00642-HEH)

—————

Argued: January 27, 2010        Decided: March 24, 2010

—————

Before WILKINSON, DUNCAN, and DAVIS, Circuit Judges.

—————

Affirmed by unpublished opinion. Judge Wilkinson wrote the majority opinion, in which Judge Duncan joined. Judge Davis wrote a dissenting opinion.

—————

**ARGUED:** Paul Alan Levy, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant. John W. Dozier, Jr., DOZIER INTERNET LAW, PC, Glen Allen, Virginia, for Appellees. **ON BRIEF:** Gregory Beck, PUBLIC CITIZEN LITIGATION GROUP, Washington, D.C., for Appellant. Donald E. Morris, Nicholas T. Moraites, DOZIER INTERNET LAW, PC, Glen Allen, Virginia, for Appellees.

—————

Unpublished opinions are not binding precedent in this circuit.

WILKINSON, Circuit Judge:

Plaintiff-appellant Ronald J. Riley ("Riley") commenced this action to obtain a declaratory judgment that he was not liable to defendants-appellees John W. Dozier, Jr. ("Dozier") and Dozier Internet Law, P.C. ("DIL") for defamation or trademark infringement. The district court abstained from exercising jurisdiction and consequently dismissed the action so that the dispute could be resolved in a pending state court proceeding in which DIL had sued Riley for trademark infringement. Reviewing for abuse of discretion, we hold that the district court's decision to abstain was within its discretion under Wilton v. Seven Falls Co., 515 U.S. 277 (1995) and Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942). Accordingly, we affirm the judgment.

I.

Defendant Dozier is a Virginia lawyer and founder of defendant DIL, a Virginia law firm that specializes in intellectual property law. Dozier maintains a website for his law firm at cybertriallawyer.com. The underlying dispute in this case arose when plaintiff Riley, a Michigan resident and head of a nonprofit corporation, created the website cybertriallawyer-sucks.com. As the name of the website

2

suggests, cybertriallawyer-sucks.com was critical of Dozier and his law firm.

The first lawsuit was initiated in Virginia state court on September 4, 2008. In that suit, DIL sued Riley for trademark infringement, alleging that Riley's website infringed on the name "Dozier Internet Law, P.C.," a registered trademark with the Commonwealth of Virginia. In response to the state action, on October 2, 2008, Riley filed his own lawsuit in the United States District Court for the Eastern District of Virginia. Riley brought the action against both Dozier personally and DIL. In his complaint, Riley sought a declaratory judgment that his website neither defamed Dozier nor infringed on DIL's trademark. Riley also sought an injunction against any future claims of defamation or trademark infringement and damages caused by the attempted suppression of his website, including "nominal damages," "punitive damages . . . in the amount of $1000," and "reasonable attorney's fees and costs." Simultaneously with the filing of his complaint, Riley also attempted to remove the state court action to federal court.

Upon motions by the defendants, the district court remanded the case back to state court and dismissed the case. In dismissing, the district court explained that even if it had subject matter jurisdiction over the case, it "decline[d] to adjudicate this case under the abstention doctrine established

3

in Burford v. Sun Oil Co., 309 U.S. 315 (1943)." It found that the state court action would afford the parties "timely and adequate state court review," and that federal adjudication would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Riley promptly filed a motion to reconsider, which the district court denied. In doing so, the district court reiterated that even if it had jurisdiction, it "must abstain from exercising jurisdiction," this time citing Employers Resource Management Co. v. Shannon, 65 F.3d 1126, 1134-35 (4th Cir. 1995), a case based on the abstention doctrine of Younger v. Harris, 401 U.S. 37 (1971). The district court noted that "Virginia's interest in adjudicating claims involving a state-registered trademark is both clear and compelling, and the state-court proceeding affords Plaintiff an adequate opportunity to present his claims."

II.

Riley now appeals the district court's dismissal order, claiming that the court abused its discretion in abstaining.

A.

The Supreme Court held in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942) and reaffirmed in Wilton v. Seven Falls Co., 515 U.S. 277 (1995) that when a plaintiff brings a declaratory

4

judgment action, the district court enjoys discretion in deciding whether to assert jurisdiction over the action or abstain from hearing it. This discretion stems from the federal Declaratory Judgment Act, which expressly provides that district courts "may declare the rights and other legal relations of any interested party seeking a declaration." 28 U.S.C. § 2201(a) (emphasis added). Given this "nonobligatory" language, the Supreme Court has explained that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288.

Thus, even when a court has jurisdiction, it "is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." Id. This court has likewise recognized that "district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions." United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493 (4th Cir. 1998) (citations and internal quotations omitted).

Although of course not unbounded, see Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 594 (4th Cir. 2004), a district court's discretion "is especially crucial when, as here, a parallel or related proceeding is pending in

5

state court." New Wellington Fin. Corp. v. Flagship Resort Develop. Corp., 416 F.3d 290, 297 (4th Cir. 2005). In such cases, district courts have "wide discretion" to decline jurisdiction. See Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 257 (4th Cir. 1996).

The Supreme Court and this court have provided district courts with general guidelines to aid their exercise of discretion. Broadly speaking, when deciding whether or not to stay or dismiss a declaratory judgment action when there is a related proceeding underway in state court, a district court should determine whether the controversy "can better be settled in the proceeding pending in the state court." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) (citation and internal quotations omitted). This requires the district court to weigh principles of "federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts." Nautilis Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 376 (4th Cir. 1994). In making these determinations, a district court must strive to avoid "indulging in '[g]ratuitous interference,' [by] permitt[ing] the federal declaratory judgment action to proceed." Wilton, 515 U.S. at 283 (citation omitted).

To further assist a district court in balancing the state and federal interests at stake in such a decision, this court has articulated four factors (the "Kapiloff factors") for consideration. United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 493-94 (4th Cir. 1998) (citing Nautilis, 15 F.3d at 377). A district court should consider:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

Kapiloff, 155 F.3d at 493-94.

### B.

When a district court abstains from hearing a declaratory judgment action in favor of a parallel state court proceeding, we must be careful on appeal to apply the Kapiloff factors deferentially, "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [the district court's] grasp." Wilton, 515 U.S. at 289; see also S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co., 372 F.3d 245, 260 (4th Cir. 2004).

In this case, we cannot say that the district court abused its discretion when it abstained from entertaining Riley's

7

request for declaratory relief and instead allowed the dispute to proceed in the related suit already underway in Virginia state court. The district court's ruling was well within the discretion recognized by the Supreme Court in <u>Brillhart</u> and <u>Wilton</u>.[1]

It was likewise consistent with an application of the four <u>Kapiloff</u> factors to the facts of this case. <u>First</u>, Virginia "has a strong interest in having the issues decided in its courts." <u>See</u> <u>Kapiloff</u>, 155 F.3d at 493-94. This case requires a determination of the liability of a Virginia resident and a Virginia law firm, involves intellectual property registered in Virginia, and demands an application of Virginia trademark law. <u>Cf.</u> <u>New Wellington Fin. Corp. v. Flagship Resort Develop. Corp.</u>, 416 F.3d 290, 297 (4th Cir. 2005). Depending on how the legal claims unfold, the questions of state law at issue may well be "difficult, complex, or unsettled," <u>see</u> <u>Great Am. Ins. Co. v. Gross</u>, 468 F.3d 199, 211 (4th Cir. 2006), and a federal court "should not elbow its way into this controversy to render what may be an 'uncertain and ephemeral' interpretation of state law." <u>Mitcheson v. Harris</u>, 955 F.2d 235, 238 (4th Cir. 1992)

---

[1] The fact that the district court varied in its abstention rationales is of no moment, because its ultimate decision was a sound one which we may affirm on alternate grounds. <u>See</u> <u>Skipper v. French</u>, 130 F.3d 603, 610 (4th Cir. 1997).

(citation omitted).  Indeed, as the district court in this case found, "Virginia's interest in adjudicating claims involving a state-registered trademark is both clear and compelling," and federal adjudication would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Second, the Virginia state court could likely "resolve the issues more efficiently" than this court.  See Kapiloff, 155 F.3d at 493-94.  As a general rule, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action."  Ellicott Mach. Corp. v. Modern Welding Co., 502 F.2d 178, 180 n.2 (4th Cir. 1974) (citation and internal quotations omitted).  Here, the state suit was filed before the federal suit.  The state proceeding is also further along than the federal action.  This court's interference with the pending state court proceeding would therefore produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigation, and expending limited judicial resources.

Third, the Virginia state court proceeding and this federal court proceeding involve "overlapping issues of fact [and] law," see Kapiloff, 155 F.3d at 493-94, because both cases center on an identical core question:  Does Riley's website infringe on DIL's trademark under Virginia trademark law?  If the state court and this court were to simultaneously find facts related

9

to alleged trademark infringement and make pronouncements on Virginia trademark law, the common issues involved here could easily result in an "unnecessary 'entanglement'" between the two tribunals.  See id.

Entanglement is all the more likely where, as here, common issues "are already being litigated by the same parties in the related stat court action[]."  Nautilis Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 379 (4th Cir. 1994).  In such cases, there is a real risk that the state court's prior resolution of overlapping issues would entitle those issues to preclusive effect, thereby "frustrat[ing] the orderly progress of the [] proceedings by leaving . . . some parts of [the] case foreclosed from further examination but still other parts in need of full scale resolution."  Id. at 377 (citation and internal quotations omitted).

Fourth, the final Kapiloff factor weighs in favor of abstention insofar as Riley's federal suit appears to be "mere 'procedural fencing.'"  See Kapiloff, 155 F.3d at 493-94.  Procedural fencing occurs when, as in this case, "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum."  Great Am. Ins. Co. v. Gross, 468 F.3d 199, 212 (4th Cir. 2006).  Here, DIL sued Riley in state court, but he did not want to be in state court.  So Riley brought his

10

own suit in federal court, requesting a declaration that he was not liable to DIL in state court. Such conduct is the sort of forum-shopping against which abstention seeks to guard.

Of course, a defendant is not powerless to influence the forum that will determine his liability, and in this case, Riley had the right to remove the state court action to federal court. However, removal is the appropriate avenue into federal court, and a declaratory judgment action may not be used "to achiev[e] a federal hearing in a case otherwise not removable." Nautilus, 15 F.3d at 377 (citation and internal quotations omitted). That is precisely what happened here. The declaratory plaintiff did try -- unsuccessfully -- to remove the case, and the district court remanded the case back to state court. Because the federal removal statute forecloses Riley from appealing the district court's remand order, see 28 U.S.C. § 1447(d), he is now attempting to get into federal court through a side entrance, by contesting and appealing the district court's dismissal of his declaratory judgment action. This attempted end-run around the removal statutes is strong evidence of "procedural fencing" and further weighs in favor of abstention.[2]

_____

[2] Riley contends that the discretionary standard of Brillhart/Wilton is inapplicable to his requests for an injunction and for monetary damages. However, the perfunctory inclusion of nondeclaratory requests for relief does not suffice to remove a plaintiff from the ambit of the Brillhart/Wilton (Continued)

C.

With all respect to our fine colleague in this case, we cannot endorse the dissent's approach or accept the effects that would flow from it. First, the dissent's view would lead to sprawling litigation in multiple forums and contravene the Declaratory Judgment Act. The dissent does not even believe Riley was sued in state court for a violation of the Lanham Act. But it nonetheless believes that this court should reverse the trial court's discretionary dismissal and essentially require the district court to declare Riley's rights under that statute.

Such a claim is troublesome. As the Supreme Court has only recently held in MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007), a district court's jurisdiction under the Declaratory Judgment Act is unquestionably discretionary. In case there were any doubt about the continuing vitality of Wilton and Brillhart, the Supreme Court has put that doubt to rest, reiterating what we ourselves have emphasized: that the Declaratory Judgment Act "confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights

---

rule. A declaratory judgment plaintiff may not convert a district court's discretionary jurisdiction under Brillhart/Wilton into nearly mandatory jurisdiction under Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 817 (1976), simply by tossing in dependent or boilerplate nondeclaratory requests.

12

of litigants." Id. (citations and internal quotations omitted). Moreover, the Court noted that district courts play a critical role in this regard, emphasizing, yet again, that the act "vest[s] district courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." Id. (citation and internal citations omitted).

The dissent in fact declines to allow district courts to do what the Supreme Court has said they are uniquely positioned to do: evaluate "the equitable, prudential, and policy arguments in favor of such a discretionary dismissal." Id. The Supreme Court made these statements, no less, in a declaratory judgment action concerning intellectual property rights. See id. at 120. By clearing the way for litigants to subvert pending state court proceedings by doing little more than positing a federal law under which they would like to be declared non-liable, we risk "turn[ing] into the federal courts a vast current of litigation." See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 673 (1950).

The proper route into federal court is under the removal statutes -- not by a collateral attack on state proceedings under the Declaratory Judgment Act. When a federal court has subject matter jurisdiction over a suit brought in state court,

13

a state court defendant may remove the case, guided by the comprehensive scheme Congress set out in the removal statutes. When, however, a state court defendant bypasses the removal mechanism and instead uses the Declaratory Judgment Act as his ticket into federal court, a district court is entitled to take that very fact into account in deciding whether or not to abstain.

We cannot agree with our colleague that the existence of federal jurisdiction somehow nullifies or diminishes a district court's discretion in a declaratory action to abstain. To the contrary, the question of jurisdiction is analytically distinct from that of abstention, and indeed, is always a prerequisite to an abstention analysis. Thus, even in cases involving federal law, "[t]he Declaratory Judgment Act [i]s an authorization, not a command. It g[ives] the federal courts competence to make a declaration of rights; it d[oes] not impose a duty to do so." Pub. Affairs Assocs., Inc. v. Rickover, 369 U.S. 111, 112 (1962). Whether or not appellant is correct to suggest that the district court in this case would not have been prohibited from asserting jurisdiction, we cannot conclude that the trial

14

court's discretion was so constrained in these circumstances that it was <u>required</u> to exercise jurisdiction.[3]

As a final matter, we cannot subscribe to our good colleague's conception of the proper relationship between state and federal courts. Whatever discretion a district court has to abstain in a declaratory judgment action, that discretion can only be enhanced when there is a related proceeding pending in state court. <u>See</u> <u>New Wellington Fin. Corp. v. Flagship Resort Develop. Corp.</u>, 416 F.3d 290, 297 (4th Cir. 2005); <u>Centennial Life Ins. Co. v. Poston</u>, 88 F.3d 255, 257 (4th Cir. 1996). The mere presence of a federal question in a declaratory suit does not somehow extinguish Virginia's interest in deciding a matter that was first filed in the state system. Such a view would be damaging to state courts, which, of course, are perfectly competent to decide issues of federal law. As the Eighth and

---

[3] The circuit court cases cited by the dissent are relevant only to the separate issue of jurisdiction and not to the issue of abstention. In fact, two of those cases found that the district court was entitled to exercise its discretion to dismiss the declaratory judgment action. <u>See</u> <u>Surefoot, LC v. Sure Foot Corp.</u>, 531 F.3d 1236, 1248 (10th Cir. 2008); <u>McGraw-Edison Co. v. Preformed Line Prods. Co.</u>, 362 F.2d 339, 344-45 (9th Cir. 1966). And in other cases, the courts disallowed discretionary dismissal under very different circumstances. <u>See</u> <u>Rhoades v. Avon Prods., Inc.</u>, 504 F.3d 1151, 1162, 1165 n.14 (9th Cir. 2007) (reversing dismissal order made on primary jurisdiction grounds); <u>PHC, Inc. v. Pioneer Healthcare, Inc.</u>, 75 F.3d 75, 81 (1st Cir. 1996) (reversing dismissal order made on primary jurisdiction grounds as to Count I but allowing discretionary dismissal as to Count II).

Eleventh Circuits have noted, state courts have concurrent jurisdiction under the Lanham Act, see Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005); Aquatherm Indus., Inc. v. Fla. Power & Light Co., 84 F.3d 1388, 1394 (11th Cir. 1996), and, indeed, there are literally hundreds of state court cases adjudicating Lanham Act claims. Thus, Riley's request for a declaration of non-liability under federal law, made alongside a request for a declaration of non-liability under Virginia law, does not render Wilton and Kapiloff inapplicable: Virginia continues to have a strong interest in resolving the state law issues; the Virginia court's head-start still gives it an efficiency advantage; overlapping issues continue to present a likelihood of "entanglement"; and evidence of "procedural fencing" remains.

Rather than vest the district court with the discretion to which it is entitled, the dissent would offer, as a consolation prize, the opportunity for it to exercise its discretion whether to stay proceedings in this case pending the resolution of the state action under Front Royal & Warren County Indus. Park Corp. v. Town of Front Royal, 945 F.2d 760 (4th Cir. 1991). Front Royal, however, is inapplicable here. It did not address a district court's authority to dismiss a case either in the context of a declaratory judgment action or in the context of

16

state court proceedings already initiated and underway.  Id. at 765.

### III.

We hold only that the district court had discretion to abstain here and did not in these circumstances abuse its discretion in doing so.  A peremptory reversal of the district court on these facts would entail serious risks, which we think it inadvisable to incur.  Among other things, such a reversal would rob Brillhart and Wilton of any meaningful effect; encourage collateral attacks upon state court proceedings under the Declaratory Judgment Act, even where the state proceedings presented only questions of state law; circumvent the removal statutes; undermine the purpose of federal non-appealability provisions with respect to remands; encourage gamesmanship by litigants in multiple forums, preliminary to any merits resolution of their cases; and deny district courts the ability to assess the variable facts and circumstances that arise in these cases and that guide the sound exercise of trial court discretion.  For all of the foregoing reasons, the judgment of the district court is hereby

AFFIRMED.

17

DAVIS, Circuit Judge, dissenting:

The majority states, "The dissent does not even believe Riley was sued in state court for a violation of the Lanham Act." Maj. Op. at 13. To the contrary, I absolutely do believe, despite Dozier's best efforts to disguise it, that Dozier asserted a Lanham Act claim in his state court complaint.[1] Dozier will be surprised to learn that the <u>entire panel</u> rejects his contention that he did not assert a Lanham Act claim in his state court complaint. See Maj. Op. at 17 ("[T]here are literally hundreds of state court cases adjudicating Lanham Act claims.").[2] This is because Dozier has unremittingly insisted that he did <u>not</u> assert a federal law claim in his state court complaint. See Mem. in Supp. Mot. to Remand (Docket No. 13),

---

[1] The complaint Dozier filed in state court in Virginia did not expressly invoke the Lanham Act and Dozier purported to assert only claims for "statutory and common law" trademark infringement, citing no specific statutory basis —- federal or state -- for the "statutory" claim. As the majority's allusion to "hundreds of state court cases adjudicating Lanham Act claims" shows, however, he in fact alleged all the elements of a federal claim in his state court complaint, and his failure to cite to the federal statute is not dispositive. See <u>Albert v. Carovano</u>, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("The failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters."). Riley properly removed the state case on the basis of <u>federal question jurisdiction</u>.

[2] Of course, this statement confirms that we are in agreement that Dozier stated a federal claim in his state court complaint. And, Congress knows how to preclude removal of a federal claim when it wishes to do so. See 28 U.S.C. § 1445(a).

18

<u>Dozier Internet Law, P.C. v. Riley</u>, Civil No. 3:08cv0643 (HEH)(E.D.Va.) ("[Dozier] has asserted only a state trademark claim and does not possess any federally registered trademark. As such, this Court would lack jurisdiction."); <u>see also</u> Appellee's Br. at 1-2 ("Despite Riley's repeated contentions that [Dozier] had stated claims [in the state court action] under 'federal law,' [he] has not.") (alterations added).

Similarly, Dozier asserts here, quite remarkably, that <u>Riley</u> did not allege a federal claim under the Lanham Act in this case. <u>See</u> Appellee's Br. at 1 ("The Trial Court Correctly Held That There Was No Federal Question At Issue"); <u>id.</u> at 2 ("Riley refers to one letter [written by Dozier] and alleges that the language implicitly invokes federal law because it mentions the words "contributory trademark infringement. . . . This is not so."); <u>id.</u> at 4 ("Under any interpretation of the facts and applicable law, the Court below correctly held that no federal question was present and as such prudently declined jurisdiction on this ground."). This alleged lack of a federal claim was the very basis upon which Dozier prevailed in the district court in persuading the district court to remand the state court action and to dismiss this action. Yet, the majority rummages through its treasure chest of abstention doctrines to find a basis on which to affirm the district court. Respectfully, I dissent.

19

I.

This case presents a dust-up over the operation of on-line "gripe sites" aimed at Dozier, a Virginia lawyer, by Riley, a self-professed Michigan entrepreneur. Dozier delivered somewhat over-heated complaint letters to Riley's Internet Service Providers ("ISPs") threatening legal action against them for alleged libelous material and trademark infringement appearing on these "gripe sites." Accompanying the letters was the Virginia state court complaint that Dozier had filed against Riley for trademark infringement, seeking damages and injunctive relief. Dozier pointedly limited his damages claim to less than the $75,000 jurisdictional amount for diversity of citizenship jurisdiction. He also sought to allege his "statutory" trademark infringement claim in a sufficiently vague manner so as to defeat removal on the basis of federal question jurisdiction, i.e., as if the claim arose solely under Virginia law. See supra note 1.

Notably, Dozier delayed serving process in the state court action, no doubt in an effort to impede removal of the case to federal court by Riley. Nevertheless, when Riley obtained a copy of the unserved state court complaint from one of his ISPs, he filed a timely notice of removal and removed the case to the United States District Court for the Eastern District of Virginia. Given Dozier's transparent attempt to disguise his

20

Lanham Act claim, Dozier filed this contemporaneous original action as a protective step to respond to Dozier's apparent cunning. With respect, in its criticism of Riley for both removing the state case and filing this protective action, the majority mistakes good lawyering for "procedural fencing."

Both actions were assigned to the same district judge. Dozier moved to (1) remand the removed action for lack of subject matter jurisdiction and (2) dismiss this action for lack of subject matter jurisdiction or, in the alternative, abstain. Riley argued in the removed case that federal jurisdiction existed on the basis of diversity of jurisdiction, insisting that the facile limitation in Dozier's ad damnum clause should not obscure the fact that the amount in controversy, including, inter alia, the value of the injunction sought by Dozier, clearly exceeded the jurisdictional minimum. Riley also argued that federal question jurisdiction existed based on the Lanham Act claim. In this case, Riley similarly argued that there clearly existed federal question jurisdiction as well as diversity of citizenship jurisdiction.

Beguiled by Dozier, the district court stumbled into three legally erroneous conclusions: (1) the state case was non-removable under 28 U.S.C. § 1441 for lack of the requisite amount in controversy and for lack of a federal claim; (2) the instant case likewise did not satisfy the amount in controversy

21

requirement and did not present a federal question; and finally, as a seeming afterthought, mentioned only in a footnote, (3) under Burford v. Sun Oil Co., 319 U.S. 315 (1943), abstention was appropriate even "assuming" there is federal subject matter jurisdiction.[3] Thus, in brief orders, the district court remanded the state case, dismissed this case, and denied a motion for reconsideration.[4]

Of course, the district court's erroneous remand of the removed case is unreviewable in this court. See 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise").

---

[3] In "assuming" the existence of subject matter jurisdiction, the district court seems clearly to have assumed diversity of citizenship subject matter jurisdiction rather than federal question subject matter jurisdiction. See J.A. 261 ("Even assuming that the amount in controversy in this case exceeds $75,000, the Court must abstain from exercising jurisdiction over Plaintiff's claims.") (emphasis added). See also infra n. 5.

[4] Strikingly, in keeping with its view that it lacked subject matter jurisdiction, the district court stated that it "must . . . decline to adjudicate this case" under Burford. J.A. 208 (emphasis added). Thus, it is highly questionable whether the district court engaged in an actual exercise of discretion. A failure to exercise discretion may be treated as an error of law and reviewed de novo. E.g., Garrett v. City and County of San Francisco, 818 F.2d 1515, 1518 n.3 (9th Cir. 1987) ("Because the district court did not exercise its discretion, the issue of whether or not it should have presents a legal question which is subject to de novo review."); Iglesias v. Mukasey, 540 F.3d 528, 531 (7th Cir. 2008); Richmond v. Brooks, 227 F.2d 490, 492 (2d Cir. 1955).

22

Rather than accepting defeat quietly and fighting things out with Dozier in state court (where, as of the time of oral argument in this case, there had been no progress whatsoever, and where there will likely be extensive proceedings regarding personal jurisdiction over Riley, a Michigan citizen), Riley has invited our appellate review of the machinations described above.

Clearly, it is only because Dozier acted so strenuously to defeat the removal of what was clearly a removable case within the subject matter jurisdiction of the federal courts, as the majority now attests, that Riley has found it necessary to jump through so many hoops. Nevertheless, I accept (as I must) the non-reviewability of the district court's remand of the state court action. But, unlike the majority, I would not give Dozier a windfall by affirming on an "alternative ground" the erroneous dismissal of this case on the ground of lack of subject matter jurisdiction. In its cursory afterthought, the district court purported to dismiss the case, in the alternative, on the ground of "abstention" under an abstention doctrine, see Burford, that the majority correctly abjures. Still, the majority rescues the district court's erroneous ruling by substituting its own version of "discretion" for the district court's erroneous legal determination.

23

II.

Tellingly, the majority's opinion does not forthrightly address the district court's primary reason for dismissing this case – lack of subject matter jurisdiction. The district court erred in dismissing the case because the complaint sufficiently pled a federal question. Moreover, the district court did not commit a mere "abuse of discretion" in declining to assert jurisdiction over Riley's request for declaratory relief on Burford abstention; it committed legal error. See supra nn. 4 & 5.

A.

As grudgingly as the majority quietly concedes the point, let it be clear that there is federal question jurisdiction in this case based on the Lanham Act, just as there was federal question removal jurisdiction in the remanded case. Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936) ("[A] right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."); Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908); King v. Marriott Int'l, Inc., 337 F.3d 421, 424 (4th Cir. 2003) (quoting Taylor v. Anderson, 234 U.S. 74, 75-76 (1914)). As we have previously stated, "[i]njunctive relief is available under the Lanham Act in proper circumstances, 15 U.S.C. § 1116, and declaratory

24

relief is available under the Declaratory Judgment Act, 28 U.S.C. § 2201." Gibraltar, P.R., Inc. v. Otoki Group, 104 F.3d 616, 618 (4th Cir. 1997) (Wilkinson, J.). A declaratory judgment plaintiff need only show a "reasonable apprehension" of being sued for infringement under the Lanham Act in order to invoke federal jurisdiction. J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:51 (4th ed. 2010) (hereinafter McCarthy).

Here, Riley's complaint has sufficiently pled a cause of action under the Lanham Act. Paragraph 2 of the complaint, which includes the statement of jurisdiction, invokes the Lanham Act, 15 U.S.C. § 1121. J.A. 4. In fact, during oral argument, Dozier admitted that he had registered the name "Dozier Internet Law, P.C." with the United States Patent and Trademark Office ("the USPTO"). This name is trademarked under Registration No. 3575012. Dozier filed the application on January 28, 2008, and the mark was registered on February 17, 2009. Although Riley filed the present suit before Dozier's mark was officially registered (but after Dozier filed the application), Dozier's current ownership of a federal trademark sufficiently creates a threat of a federal suit, thereby satisfying the requirements of

the Declaratory Judgment Act.[5] Even if it were true that Dozier has not sued Riley under federal law,

> The purpose of declaratory judgment is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim. The purpose of federal declaratory judgment in trademark cases is almost identical to that in patent cases, where declaratory judgment litigation is quite common.

McCarthy § 32:50 (citing McGraw-Edison Co. v. Preformed Line Products Co., 362 F.2d 339 (9th Cir. 1966), cert. denied, 385 U.S. 919 (1966) (patent case)). With this in mind, the Second Circuit has found an actual controversy even though the defendant's CFO testified that his company had no present intentions to file a federal trademark infringement suit against the declaratory judgment plaintiff. Starter Corp. v. Converse, Inc., 84 F.3d 592 (2d Cir. 1996).

Our sister circuits have also reversed district courts that have dismissed trademark declaratory judgment actions where the plaintiffs had reasonable apprehension of being sued. See, e.g., Rhoades v. Avon Prods., Inc., 504 F.3d 1151 (9th Cir. 2007) (finding sufficient apprehension of imminent suit after the

---

[5] The First Circuit has even held that a cease and desist letter from the owner of an unregistered mark that mentions only state – not federal – law, sufficiently creates a reasonable apprehension of suit of infringement under the Lanham Act. PHC, Inc. v. Pioneer Healthcare, 75 F.3d 75 (1st Cir. 1996).

party seeking trademark registration with the USPTO made threats of litigation on the heels of unsuccessful negotiations); Surefoot, LC v. Sure Foot Corp., 531 F.3d 1236 (10th Cir. 2008) (finding sufficient apprehension of imminent suit after owner of trademark repeatedly accused infringement and occasionally threatened litigation).

Here, Riley's situation was more perilous, inasmuch as Dozier had already (1) threatened Riley's ISPs with litigation and (2) Dozier had filed a trademark infringement suit against Riley for prior versions of the same website.[6] Indisputably, Riley properly brought suit for declaratory judgment of non-infringement under the Lanham Act in the Eastern District of Virginia. Thus, the district court erred in dismissing this case based on lack of jurisdiction.

B.

The district court also committed legal error in grounding its dismissal in Burford abstention. The majority does not dispute this. Contrary to the majority's elastic application of the Kapiloff factors, which are particularly relevant in

---

[6] The parties conceded during oral argument that Riley's declaratory judgment action asserted here does not deal with the same websites at issue in the Virginia case, and that Dozier is a party in his individual capacity in this case but not in the state case. Manifestly, the similarities between the two cases are not nearly as overlapping as the majority suggests.

diversity cases as "guideposts" for the exercise of a district court's discretion, see 155 F.3d at 493-94, this case presents substantial federal claims.[7] Under the circumstances here, we should hew to our long-held view that "[a]bstention remains the exception and the exercise of congressionally mandated jurisdiction remains the rule." Johnson v. Collins Entm't Co., 199 F.3d 710, 722 (4th Cir. 1999) (Wilkinson, J.). The majority's rescue mission is undertaken in the face of the Supreme Court's clear recognition that a district court's exercise of discretion to abstain from adjudicating a declaratory judgment action in a federal question case may well involve special considerations not fully captured by Brillhart and Wilton:

> [W]e conclude that Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), governs this declaratory judgment action and that district courts' decisions about the propriety of hearing declaratory judgment actions, which are necessarily bound up with their decisions about the propriety of granting declaratory relief, should be reviewed for abuse of discretion. We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.

---

[7] The cases cited by the majority in which the Kapiloff criteria are applied and abstention was sustained are diversity cases. See, e.g., New Willington, 416 F.3d at 292; Centennial Life, 88 F.3d at 256.

<u>Wilton</u>, 515 U.S. at 289-90 (emphasis and alteration added). I would not get out ahead of the Supreme Court as the majority does here.

III.

I recognize that the disposition here is nonprecedential under our rules. Still, I fear that we provide an incentive to counsel seeking abstention to cite to the district courts the full panoply of abstention doctrines in any case.[8] Thereafter, having been provided with the full menu, a district court can make a selection, whether or not correct under settled law, and counsel can defend a ruling to abstain by offering this court the opportunity to select whatever abstention doctrine fits the court's fancy. <u>Kapiloff</u> abstention, in particular, unmoored from the considerations which animated its creation in the context of insurance coverage disputes arising in diversity of citizenship cases, will surely become known as "Catch-all Abstention."

I would reverse and remand this case to the district court to afford it an opportunity to exercise an <u>informed discretion</u>, that is, with an understanding that federal jurisdiction here is

---

[8] <u>See generally</u> <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496 (1941); <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943); <u>Colorado River Water Conser. Dist. v. United States</u>, 424 U.S. 800 (1976); <u>Younger v. Harris</u>, 401 U.S. 37 (1971); and <u>United Capitol Ins. Co. v. Kapiloff</u>, 155 F.3d 488, 493 (4th Cir. 1998).

29

not doubtful, and to permit it to apply its discretion whether to stay rather than dismiss this case pending further proceedings in the state action. Cf., e.g., Front Royal and Warren County Indus. Park Corp. v. Town of Front Royal, 945 F.2d 760 (4th Cir. 1991), cert. denied, 503 U.S. 937 (1992).